### CAMPBELL v. SMITH et al.

No. 15030—Opinion Filed Oct. 28, 1924.

Rehearing Denied Jan. 27, 1925.

**1. Joint Adventures—Partnership Relation —Intent.**

The usual test of a partnership as between parties to a joint adventure is their intent to become partners.

**2. Appeal and Error—Review—Sufficiency of Evidence in Equity Case.**

The rule is well established that in a purely equity case it is within the power of the Supreme Court to consider the evidence and render judgment thereon; but the Supreme Court will not interfere with the judgment of the trial court unless the same is clearly against the weight of the evidence.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Seminole County; Geo. C. Crump, Judge.

Action by S. W. Campbell against R. H. Smith and Guy M. Buchner. From judgment in favor of defendants, plaintiff brings error. Affirmed.

A. M. Fowler, Rainey & Flynn, and Calvin Jones, for plaintiffs in error.

Pryor, Stokes & Carver, and Ralph P. Welch, for defendants in error.

Opinion by PINKHAM, C. The plaintiff in error, S. W. Campbell, as plaintiff, instituted this action in the district court of Seminole County against the defendants in error, R. H. Smith and Guy M. Buchner, as defendants.

The parties will be referred to as plaintiff and defendants, as they appeared in the trial court.

The plaintiff, Campbell, in his petition, alleged, in substance, that on or about the 1st day of January, 1922, he and the defendant Buchner entered into an agreement to promote an oil and gas prospect in Seminole county under the terms of which the plaintiff and defendant Buchner were to devote their time and services in securing oil and gas leases upon lands in said county, and to procure the drilling upon said lands of a test well for oil and gas, and that said leases when so secured were to be the joint property of plaintiff and the defendant Buchner; that pursuant to said agreement the plaintiff and defendant procured oil and gas leases upon a large acreage of land in Seminole county situated in township 8 N. and range 8 E., describing the same; that all of said leases were taken in the name of defendant Guy M. Buchner, as lessee, but under the terms of the agreement between the plaintiff and defendant Buchner, the plaintiff became the owner of an undivided one-half interest in the leases, and that the defendant Buchner held the title to said undivided one-half interest in trust for the use and benefit of the plaintiff.

Plaintiff further alleged in his petition that on or about the 1st day of March, 1922, he and the defendant Buchner entered into an agreement with the defendant R. H. Smith whereby the said Smith was, at his own expense, to drill a test well for oil and gas upon said lands, and as compensation therefor was to receive and have assigned to him an undivided seven-eighths interest in said leases, and the remaining interest therein was to be and remain the joint property of plaintiff and the defendant Buchner; that pursuant to said agreement the defendant Smith drilled a test well for oil and gas on said lands; and that the plaintiff was will-

ing that he be assigned an undivided seven-eights interest in said leases.

Plaintiff further alleged that the defendant Buchner, in denial of plaintiff's rights and with intent to cheat and defraud him, was about to assign the plaintiff's interest in said leases.

Plaintiff prayed that the court decree him an undivided one-sixteenth interest in said leases, and that the defendants be required to execute and deliver to him proper and legal conveyances and assignments of said interest in said leases.

Defendants in their answer admitted that they were the owners of oil and gas leases described in plaintiff's petition, but denied that they or either of them ever had any contract with the plaintiff, and specifically denied that the plaintiff was to have one-half of the interest retained by the defendant Buchner, or any other interest in said leases.

The defendants prayed that plaintiff's claim be denied, and by way of cross-petition alleged that the plaintiff had placed of record in Seminole county certain instruments asserting an interest in said leases, and asked that said instruments be cancelled, and that the plaintiff or persons claiming through him be enjoined from claiming any interest in or to the oil and gas rights in said leases as against the defendants, or either of them.

At the conclusion of the evidence the court entered its judgment, denying the plaintiff the relief prayed for in his petition and quieting the title of defendants Buchner and Smith in said leases.

Motion for new trial was overruled, and the case comes regularly on appeal by the plaintiff to this court on petition in error with case-made attached.

For reversal of the judgment counsel for the plaintiff submit two propositions. First, that under the uncontradicted evidence the plaintiff was in any event entitled to judgment for the interest claimed in one of the leases termed "the D. Campbell leases"; second, that the weight of the evidence greatly preponderates in favor of plaintiff, and the judgment of the trial court in favor of defendant Buchner was against the clear weight of the evidence.

In a case of this character this court is required to review the entire record, and if it appears that the judgment of the trial court is clearly against the weight of the evidence, to reverse the cause, but the judgment of the trial court will not be set aside

where it is not clearly against the weight of the evidence.

The record discloses that the defendant Buchner was an oil and gas lease broker, and that he had been continuously engaged in that business for a period of ten or twelve years; he had caused to be drilled several oil wells and was interested in a considerable number of oil and gas leases.

In the latter part of 1921, the plaintiff, S. W. Campbell, was engaged in the abstract business, which business he discontinued in September, 1921. In November of the same year the defendant Buchner requested the plaintiff to check some records in Hughes county. After the defendant did such checking he and one Bennett formed a partnership for the purpose of purchasing and selling oil leases. Some of these leases the plaintiff and Bennett took to Buchner's office, some of which Buchner sold under an agreement by the terms of which Buchner received one-half of the profits and the plaintiff and Bennett one-half.

It appears that this arrangement continued, according to the testimony of plaintiff, until about January 10, 1922, and according to the testimony of Bennett until some time in February, 1922, at which time the plaintiff and Bennett dissolved their partnership.

The plaintiff testified that after he and Bennett discontinued procuring leases, in January, 1922, as partners, he entered into an agreement with the defendant Buchner to the effect that he was to assist Buchner in "getting up blocks of acreage, selling leases that we might buy or sell leases that might be listed with us. We just entered into an agreement to buy and sell leases listed with us and get up blocks—we were working on two blocks at the time."

Much evidence in the case was directed to the status of these two blocks, one of which is referred to in the evidence as the "north" block, the same being located north of the town of Wewoka, and the "south" block, being south of Wewoka.

Plaintiff testified that he did most of the work in the "north" block, and that the defendant Buchner did most of the work in the "south" block.

With reference to this "north" block it clearly appears that nothing resulted from the efforts of plaintiff to block leases in that block so far as the defendant Buchner was concerned.

The "D. Campbell Lease" in which the plaintiff claims a one-half interest owned by

Buchner, it appears from a careful examination of the record, was obtained under the following facts and circumstances, briefly stated : The defendant Buchner had been endeavoring for a long time to secure this "north" block of leases, and had taken steps to have a test well drilled thereon. A number of land owners in the said "north" block, including D. Campbell, the father of plaintiff, were desirous of having Buchner secure a sufficient amount of acreage in that block to justify the drilling of a test well thereon. Mr. Buchner testified in this connection that he went with the plaintiff and had a talk with his father, D. Campbell, about the matter, and that he told the plaintiff and his father that "if they would put that over I would back them up and divide that up in any way they wanted to."

It further appears that at that time Mr. Buchner was at work blocking up acreage in the "south" block where he had arranged with the defendant Smith to drill a test well in the said "south" block; that he had no time personally to work on the "north" block, and left the matter with the plaintiff, after writing up leases and escrow agreements and giving them to the plaintiff to be used on the "north" block.

In this situation the defendant Buchner testified, in substance, that he asked the plaintiff if he would get a lease for him on a forty-acre tract in the "south" block owned in part by the plaintiff's father in exchange for what he was doing in the "north" block where the plaintiff's father was the owner of a large acreage.

While there is no direct evidence that the plaintiff procured the lease on the forty-acre tract in question—in fact the plaintiff testified that he could not say whether he got that lease signed or not—the presumption is that D. Campbell signed the said lease at the request of his son, inasmuch as Buchner had delivered it to the plaintiff and the same was returned to Buchner executed by the father of plaintiff.

It further appears that the leases that Buchner relied upon securing on the "north" block, including leases on the lands owned by D. Campbell, were as a matter of fact made to another party in no way connected with the defendant Buchner. It appears that D. Campbell, instead of leasing his land in this "north" block to Buchner as he had promised, leased it to one Getman at $10 per acre.

It appears, further, without dispute, that the plaintiff terminated his connection with the defendant Buchner on the 23rd day of March, 1922, and at that time left his office for good, and established his residence in various cities in Oklahoma and in the state of Texas.

Evidence was introduced of a very convincing character to the effect that at or shortly after the plaintiff severed his business relations with the defendant Buchner, he stated to a number of persons who testified in the case that he had closed up or settled with Mr. Buchner, and was not interested in any leases held by him.

There is no evidence in the record before us of any claim made by the plaintiff to the defendant Buchner, or to any other person of any interest in the leases involved and held by the defendant Buchner, including the "D. Campbell" lease, until the 24th day of March, 1923, a year after he had left Buchner's office, when notices of his claims were filed in the office of the county clerk of Seminole county.

It appears that the plaintiff, after he learned that a well had been brought in on the Smith-Buchner block, returned to Wewoka and filed four of these notices, and in this connection it may be observed that all of them are of different descriptions of land, and that the first affidavits filed by the plaintiff do not contain a description of his father's land.

It further appears that on June 6, 1922, several months after the plaintiff had left the office of Buchner, Mr. Buchner made an assignment of a seven-eighths interest in the leases held by him in the "south" block to the defendant, Smith, who drilled a test well in said block on a lease procured by Smith individually.

Counsel for plaintiff say in their brief that the plaintiff is not seeking in this action to recover anything that was transferred in good faith by Buchner to Smith, and there is no contention that Buchner's transfer to Smith was in bad faith.

It is earnestly contended by counsel for the plaintiff, S. W. Campbell, that under the evidence the judgment of the trial court should be reversed and the plaintiff awarded an undivided one-half interest of all the right, title, and interest now held by the defendant Buchner in the leases in controversy.

The theory on which this proposition is based is that the relationship of joint adventurers existed between Buchner and the plaintiff during the time the plaintiff was connected with the defendant's office, and cases are cited in support of this contention.

We are convinced after a careful examination of the entire record before us, that the theory of a joint adventure relation existing between these parties finds no support in the evidence, and that the authorities cited are not applicable to the instant case.

"The usual test of a partnership as between the parties to a joint adventure is their intent to become partners." 15 R. C. L. 500.

"The relation of joint adventurers is governed by the principles which constitute and control the law of partnership." 15 R. C. L. 500.

"Every partnership rests on the mutual consent of the members." 20 R. C. L. 832; Karrack v. Hanaman, 168 U. S. 328, 18 S. Ct. 135.

If the parties do not intend to become partners ordinarily they cannot be considered as such. 17 Am. & Eng. Enc. Law [1st Ed.] 832, 833, and authorities there cited.

Tested by these rules we are unable to find anything in the evidence to sustain the proposition that the relation of joint adventure existed between the parties. The plaintiff in his testimony admitted substantially that he went into Mr. Buchner's office for the purpose of learning the oil business; that he had no financial means and that he would like to try purchasing leases, and inquired of Mr. Buchner if it would be satisfactory for him to stay around his office and submit leases to him to sell.

The defendant Buchner testified that the plaintiff told him he would like to know something about the oil business, and that if there was any work around the office that he could assist in doing about leases, that he would only be too glad to assist Buchner in order to have that experience.

Mr. Buchner further testified:

"Whenever I had telephone calls or a letter from clients where I wanted acreage I would tell Mr. Campbell about what price I could pay for it and he would go out and check the records and submit me the acreage, and I do not remember the times I have gone ahead and advanced him the money to take care of his house rent, grocery bills, telephone bills on leases that I would handle for him * * * and pay him a commission when it came in."

This seems to have been substantially the arrangement under which the plaintiff entered the defendant's office.

It cannot be said, we think, that under such a state of facts a joint adventure relation was ever contemplated by either of the parties.

We conclude upon a careful scrutiny of the entire record that the judgment of the trial court is not clearly against the weight of the evidence.

In cases of purely equitable cognizance the judgment of the trial court will not be disturbed unless it is clearly against the weight of the evidence.

We think the judgment of the trial court should be affirmed.

By the Court: It is so ordered.