## TWYFORD et al. v. SONKEN-GALAMBA CORPORATION.

No. 26508. Sept. 8, 1936.

Rehearing Denied Sept. 29, 1936.

William J. Crowe, for plaintiffs in error.

Hickman & Ungerman and Nowlin & Conner, for defendant in error.

GIBSON, J. This is an action to enjoin the sale of personal property under chattel mortgage. It was commenced in the district court of Oklahoma county by Sonken-Galamba Corporation, referred to herein as plaintiff, against James S. Twyford and Solon W. Smith, and Alex B. Unger, sole surviving partner of Unger Brothers Metal Company, a copartnership. From a judgment

granting a permanent injunction, Twyford and Smith have appealed. Twyford and Smith are referred to herein as defendants, and the above-named copartnership will be referred to as Unger Brothers.

The essential facts are that Unger Brothers were under contract with the Oklahoma City, Ada & Atoka Railway Company for the purchase from it of certain locomotives. In the year 1929, by written contract with the plaintiff corporation, Unger Brothers agreed to take plaintiff in on the railway contract to the extent of a half interest therein. The contract in all respects attempted to create a partnership between the parties thereto.

In the year 1931, a written supplemental agreement was entered into between plaintiff and Unger Brothers whereby the plaintiff was given exclusive possession, control, and management of the property in question, and said contract also reserved to the plaintiff the right to reimburse itself for all sums expended by it in maintaining, handling, selling, and disposing of the property, after which there should be a division of the net proceeds.

Neither of said contracts was filed with the county clerk, and the defendants were unaware of their existence, but they were advised of the fact that plaintiff owned a half interest in the property, and this prior to the execution of the mortgage to defendants.

The locomotives, the property here involved, were placed on the tracks of the Oklahoma City Street Railway Company by Unger Brothers and remained in possession of that company throughout the transactions referred to herein and this litigation.

On September 18, 1932, Marcus Unger, of Unger Brothers, executed a chattel mortgage covering a one-half interest in the locomotives to the defendants, Twyford and Smith, who are attorneys at law, to secure payment of a note given said defendants January 12, 1932, in payment of legal services rendered Unger Brothers in matters foreign to the business relations of plaintiff and Unger Brothers. Defendants are now attempting to foreclose their mortgage by advertisement, as provided in sections 11272-11274, O. S. 1931.

Plaintiff, by this action, seeks to enjoin the proposed foreclosure. It predicates its action upon the theory that the relationship of joint adventurers existed between it and Unger Brothers at the time defendants received their mortgage and that the rights of the parties here must be determined by the laws governing such relationship. As further ground for injunction, plaintiff asserts that it was at all times in possession of the property by virtue of its supplemental contract with Unger Brothers and that defendants were attempting to foreclose and sell under chattel mortgage property not in their possession, which, plaintiff says, may not be done under the laws of this state. Plaintiff further says that it has advanced a sum of money to the business far in excess of the amount received and that it has a lien upon the interest of Unger Brothers for the amount so advanced.

On the other hand, defendants say that the relationship existing between plaintiff and Unger Brothers was merely one of joint owners and that their mortgage executed by a joint owner was a valid and subsisting obligation and created a lien upon the half interest covered thereby. In this connection it is urged that the sale by Unger Brothers to plaintiff was void as against defendants as creditors of Unger Brothers in that the purported sale was unaccompanied by immediate delivery and followed by an actual and continued change of possession of the property, as required by section 10008, O. S. 1931.

The contracts clearly reveal the sole intention of the parties was to acquire, salvage, and sell the locomotives and to conduct that venture on the basis of a partnership relation. This is indicated by the following extracts from said contracts:

"Second party desires to become a partner in said venture, and agrees to pay said first party for the privilege for being taken into said venture, the sum of $3,000; and

"Whereas, the parties desire that after said $3,000 is paid to said first party for said privilege to share the profits in said venture, or assume the losses. * * *"

Since a corporation is incapable of entering into a partnership agreement with individuals, the agreements here are ineffective to that purpose. Municipal Paving Co. v. Herring, 50 Okla. 470, 150 P. 1067. As was stated by the court in that case:

"* * * It appears to us that this is a very strong indication that the parties did not intend to enter into a partnership agreement here. All persons are presumed to know the law, and it is to be presumed that this contract was entered into with full knowledge that the defendant corporation could not enter into a partnership agreement that would be binding upon or enforceable by either party, and the equally strong

presumption would follow that neither would desire or intend to make a contract which the law would not enforce.

"We are inclined to the opinion that the contract entered into partakes more of the nature of a joint venture, which the corporation did have the power to enter into, if the nature of the contract is in line with the business its charter authorizes, a matter about which there is no dispute. * * *"

Here plaintiff and Unger Brothers combined in a specific venture wherein they jointly sought profit without any actual partnership or corporate designation. Such constitutes a joint adventure. 63 A. L. R. 911. In such case the law of partnership applies in settlement of the questions arising among the parties and in relation to other parties. Dobbins v. Texas Co., 136 Okla. 40, 275 P. 643.

The plaintiff and Unger Brothers were joint adventurers, but defendants were without actual knowledge of the real relationship between them. Defendants admit knowledge of the joint ownership of plaintiff and Unger Brothers in the property. They therefore had knowledge of an ownership which amounted to a cotenancy; and the question of which of the two cotenants held actual possession of the property becomes of little importance here, for the possession of one cotenant is the possession of all (62 C. J. 423, 424); and this rule applies to personal property to that degree where the courts may not take the property from one cotenant and give it to another except by proper action in equity for partition. Julian v. Yeoman, 25 Okla. 448, 106 P. 956.

In view of the information possessed by defendants at the time their mortgage was executed, they knew they were dealing with one of two cotenants in possession. Plaintiff had performed no act within the knowledge of defendants that was inconsistent with the interest it actually claimed and owned. No element of estoppel appears in the record; it at no time represented by recorded instruments or otherwise that its interest in the property was other than the interest actually claimed.

We have here a situation where parties have knowingly dealt with trust property. A tenant in common in possession holds the common property in trust for his cotenant. Ludey v. Pure Oil Co., 157 Okla. 1, 11 P. (2d) 102. Defendants therefore dealt with a trustee when they took the mortgage from Unger Brothers. In the absence of estoppel as against plaintiff, the cestui que trust, they were legally bound to ascertain the extent of the trust relationship. In such case, knowing that a trust existed, due diligence was required of defendants to ascertain the claims of plaintiff. 65 C. J. 790, sec. 662, announces this rule with reference to mortgaging trust property. Here defendants failed to exercise due diligence, whereas, if they had observed due diligence they could have discovered the true interest of plaintiff, which interest was that of joint adventurer with Unger Brothers.

It follows that defendants are charged with knowledge that the plaintiff and Unger Brothers were engaged in a joint adventure and that the property in question was involved in that venture. The laws of partnership must therefore be applied in the settlement of this controversy. Dobbins v. Texas Co., supra.

Under our statutes and decisions a partner may have the partnership assets applied to the payment of the partnership debts and to the payment of any balance due him, and he has a lien on the property for such purpose. Section 11630, O. S. 1931; Martin v. Carlisle, 46 Okla. 268, 148 P. 833. Here the plaintiff had a right to subject all of Unger Brothers' interest to the payment of the debt due them if such became necessary.

We agree with the statement of the Supreme Court of Iowa in Schwanz v. Farmers Co-operative Co., 214 N. W. 491, 55 A. L. R. 644, that "a mortgage given by a partner upon his interest in the chattel property of the partners to secure his individual indebtedness is not per se invalid, but is subject to all partnership liens and debts." The right of a partner's assignee is only an equity to share in the surplus after settlement of partnership accounts. First National Bank v. Dunklin, 146 Okla. 81, 293 P. 541. This applies as well to the mortgage of a partner.

Here the defendants' mortgage was not invalid under the laws of partnership, but was subject to all partnership liens and debts. The mortgage purported to grant to defendants the right to possess themselves of the property in the event of default, but Unger Brothers were without power to grant that right to defendants for the reason they had already granted exclusive possession and right of liquidation to plaintiff. This they are authorized to do by section 11659, O. S. 1931, and defendants were charged with knowledge of this fact. All that remained to Unger Brothers at the time they executed the mortgage was to share in any net profits during or at the conclusion of the liquidation of the venture.

The mortgage was effective only as a lien upon that right. It was not a lien upon the physical property described therein. Upon conditions broken the defendants were empowered to foreclose upon that interest as in case of any chattel mortgage. The purchaser at such foreclosure would succeed to the rights of Unger Brothers to participate to the extent of one-half of the net profits accruing from the venture.

In view of the foregoing, we hold that where a joint adventurer executes a mortgage on his share of the personal property to secure his individual indebtedness, such mortgage serves only as a lien upon the adventurer's right to share in the net profits of such venture and, in the absence of estoppel as to the remaining adventurers, the mortgagee may not, on other than equitable grounds, interfere with their right to possession of the joint property for purposes of liquidation of the venture.

The judgment of the trial court awarding the injunction is affirmed.

McNEILL, C. J., and RILEY, WELCH, and CORN, JJ., concur.