O. R. GRAGG and Hallie Gragg, a copartnership, d/b/a Gragg Construction Company, Plaintiffs in Error,

v.

Marvin JAMES and Paul Kealiher, Defendants In Error.

No. 41696.

Supreme Court of Oklahoma.

March 25, 1969.

Anton Koch, Henryetta, Clyde Watts, Watts, Looney, Nichols & Johnson, Oklahoma City, for plaintiffs in error.

Bonds, Matthews & Mason, Muskogee, for defendant in error, Marvin James.

BERRY, Vice Chief Justice.

Appellants, a copartnership hereafter designated as Gragg, appeals from a judgment rendered in favor of defendant in error, James, referred to as plaintiff, in his action to recover for labor and materials furnished under subcontract for construction of a state road project.

Gragg was a qualified bidder upon state highway construction projects involving federal and state road funds, being bonded by United Pacific Insurance Company, a trial court defendant not involved in this appeal. Paul Kealiher, hereafter the defendant, was a highway construction engineer and contractor, but not qualified to bid projects in his own name. Although both the nature and effect of their relationship is disputed, these parties joined in bidding and performance of highway construction projects under written contract. Upon defendant's engineering knowledge projects

would be bid in Gragg's name and contracts secured under successful bids then would be assigned to defendant for actual performance. For use of the name in bidding, handling of payrolls and participation or supervision in the project Gragg received 3% of the total contract. Generally defendant handled culvert and bridge work and sublet other portions of the projects with Gragg's knowledge.

Contracts between Gragg and defendant all contained provisions against subletting of a construction project without written consent. Highway department contracts likewise prohibited assignment except to a certified contractor, and in no event more than 50% of the contract. This was known to defendant and Gragg, although the department's rules and regulations were not introduced into evidence. The surety company guaranteed against Gragg's default upon each of the three projects bid and assigned to defendant. Although this appeal primarily concerns work completed on the Kay County project, necessary reference to collateral matters involved under other contracts will designate the project by name of the county where located.

Plaintiff alleged Gragg secured the Kay County highway contract in March 1963, and then subcontracted this project to defendant. Defendant then contracted in writing with plaintiff to furnish labor and materials for dirt moving at the same price. Plaintiff completed this portion of the work and thereby was entitled to $7,518.50, for which demand had been made upon all defendants but remained unpaid, and judgment was sought for this amount.

Defendant answered by general denial, although admitting Gragg secured the contract and sublet to defendant, who in turn sublet to plaintiff, and that $5,813.65 was due defendant upon the Kay County project. Defendant then cross-petitioned against Gragg claiming $3,070.74 due and owing for defendant's performance of work under a contract performed in McCurtain County, and the further sum of $6,570.89 due for work performed under contract in Pushma-

taha County. Defendant asked judgment for total of $15,455.39 under cross-petition for work performed under three contracts with Gragg.

Gragg generally denied defendant's allegations, other than admitting Union Pacific's execution of the bond. Gragg's cross-petition admitted execution of the written contracts for road construction in the named counties and the agreement to furnish defendant's payrolls, but asserted contracts were non-assignable without written consent, and there was no contract with plaintiff, or consent for defendant's subletting, so neither plaintiff nor defendant was entitled to judgment. Additionally, Gragg admitted the amount due defendant on the McCurtain project was unpaid, having been applied against a net loss resulting from the Pushmataha project. Further the amount ($5,813.76) due defendant upon the Kay contract also had been applied against the Pushmataha project loss, thereby leaving total deficit of $54,756.63 for which Gragg asked judgment. Defendant insurer alleged full compliance with terms of the bond as well as the further defense of the statute of limitations.

Defendant replied denying contrary allegations and affirmatively alleged Gragg's indebtedness under three contracts: Kay $5,900.15; McCurtain $3,070.74; Pushmataha $6,570.89. Defendant specifically denied indebtedness for loss on Pushmataha project, asserting any loss was fault of Gragg for assigning all of such contract except culvert work which defendant completed, and after deduction of all credits sum of $6,570.89 was due from Gragg. Further, having tacitly consented to Gragg's subletting of contract defendant was released from liability for work performed by another subcontractor (Logan), and was entitled to judgment for $15,541.78 due under three contracts.

At opening of the trial plaintiff was granted leave to amend and show $6,869.59 as the amount claimed. Defendant then amended answer to admit such amount was due and owing and plaintiff was entitled

to judgment for such amount. Early in the trial defendant and Gragg stipulated a profit of $5,813.76 from the Kay project and $3,070.74 from McCurtain project would have been due defendant except for offset claimed on the Pushmataha contract. A further effort to stipulate as to a possible profit due defendant on the latter contract was nullified by Gragg's refusal upon the ground the entire contract assigned to defendant was a single project and various items of construction costs were not separable.

The issues here involved concern the trilateral rights of those parties who actively engaged in performance of the highway construction contracts. The principle contention is based primarily upon error allegedly resulting from the trial court's refusal to enforce Gragg's subcontract with defendant. Several contentions, and much of the supporting argument, principally concern evidentiary matters which necessitates summation of a portion of the evidence.

The three project contracts were identical other than as to dates and construction site. The Pushmataha contract, of principal concern here, in substance provided as consideration for subletting that defendant furnish materials and equipment, discharge all duties and obligations diligently and promptly, and complete all operations imposed upon Gragg by the original contract. For failure, neglect, or discontinuance defendant's rights were forfeitable without notice or demand, and Gragg could take over and complete the project with defendant remaining liable for completion costs. Any payments by Gragg were reimbursable from and constituted a lien upon contract funds or any assets of defendant, as security for all contractual obligations. Gragg was to pay defendant the full contract price received from the state, less 3% fixed charge. The contract was not to be assigned or sublet without Gragg's written consent.

In June 1963 Gragg learned the Pushmataha project was behind schedule. After discussion with defendant, Gragg requested another contractor (Logan) to survey the job. This party ultimately completed the dirt work during the time defendant was completing culverts and bridges on the project. Eventual completion of this project resulted in $54,756.63 loss according to Gragg's testimony.

Plaintiff's evidence concerning the contract, performance thereunder, and right to payment was uncontroverted and sufficient to support the allegation of the petition. This evidence was corroborated in essential respects by defendant's testimony, which further showed Gragg's knowledge as to previous subletting of contracts and particularly subletting the Kay project to plaintiff. Other evidence showed Gragg paid for some labor and material, forwarded estimates and progress reports and filed requisite claims with highway department, kept a personally paid employee on the project and in some instances personally assisted in management.

In this connection, Gragg acknowledged the consistent practice of handling contracts in such manner, despite knowledge of the contractual prohibition against assignment or subletting of highway department contracts; and confirmed presence of his supervisory employee on the job and payment for materials, although denying knowledge of plaintiff's subcontract. Gragg also testified defendant could not have completed the assigned contracts without Gragg furnishing materials and financing on these projects.

During defendant's testimony in support of the cross-petition the parties stipulated Gragg was indebted in the amounts mentioned on the Kay and McCurtain projects. There was other testimony as to circumstances leading up to Gragg's turning the dirt work to Logan. Upon the court's inquiry whether the parties could stipulate a profit of $6,570.89 would have been due defendant except for the dirt work, Gragg's counsel declined, upon grounds the contract was one project and it was the entire project which had been assigned to defendant.

Defendant's testimony was that he completed his part of the Pushmataha project,

but did not complete the entire project because Gragg took over the contract and gave the dirt work to Logan. The evidence also showed Gragg collected over $21,000.00 on defendant's completed work, deducted 3% and paid $14,663.78 to defendant, who had been able to separate items in the department's final estimate and ascertain what was earned for different phases, i. e., bridges and culvert, dirt and drainage. Contradictory testimony in Gragg's behalf indicated defendant's inability to perform resulted from lack of proper equipment, which could not be secured without additional financial assistance from Gragg to permit leasing needed machinery.

Upon completion of the evidence the parties rested, and the court then stated:

"* * * I would like for it to be agreed that all parties can and do have exceptions to any instruction you please. Can you write it on the instructions and I will sign it? I was unhappy because the rules and regulations of the Highway Department were not introduced. The testimony is without exception that only a qualified contractor can bid. Mr. Kealiher was not qualified. We don't have the rules and regulations, but it is undisputed testimony. I have taken the view that Gragg and Kealiher, whether they were joint agents or not, they were at least interested they circumvented the laws and regulations of the State of Oklahoma to the detriment of laborers and people. The reason I am mentioning this, I don't want to use any hard words before the jury. At least they got together, and they not only attempted to, but did, circumvent the rules and regulations of the State. I think each of them under all of their contracts is liable for the wrong doing of the other.

"I am going to instruct a verdict for the plaintiff against all three defendants, and let the two cross-petitioners fight it out among themselves. Exceptions are particularly allowed to that."

The court then directed the jury to return a verdict for plaintiff against both defendant and Gragg and the surety company. The court also advised the jury the parties had stipulated, in event the Pushmataha contract could be separated between items for culvert work and the grade and dirt work, $6,570.89 would be due defendant as profit, although Gragg contended the contract was an entirety from which loss resulted. There was a further instruction that the jury could find the written contract could be altered by a subsequent executed oral agreement, and in event the jury found such alteration a verdict ($8,585.80) could be returned for defendant.

The theory upon which the court's quoted comment was based then was included as part of instruction No. 5, stating:

"You are thereof re-instructed as a matter of law that Gragg Construction Company and Paul Kealiher were actually in a joint enterprise and an agency relation existed, and Gragg Construction Company is estopped from denying its liability to the plaintiff; that the debt of Kealiher to plaintiff is likewise the debt of the Graggs."

Verdicts were returned for plaintiff against all defendants for $6,869.59, the amount acknowledged to be due on the Kay project, and verdict in defendant's favor for $8,585.80 against Gragg.

Motions for new trial were filed by Gragg and the defendant bonding company. The motion was sustained as to the instructed verdict against the latter and the cause of action dismissed. Motion for new trial by Gragg was denied and this appeal resulted.

The various contentions presented are based upon matters which Gragg asserts present the controlling issues disclosed by the pleadings and evidence. The issues defined by Gragg urge error in these particulars:

1. Submitting the issue as to verbal alteration of the contract for the jury's consideration;

2. Directing a verdict for plaintiff against defendant and Gragg jointly;

3. Instructing the jury Gragg had stipulated as to the amount of plaintiff's

recovery because no such stipulation was made by counsel.

Accepting correctness of this definition of issues, our first consideration concerns the issue (two) as to propriety of directing a verdict in plaintiff's favor. Three propositions are advanced upon this basis, the first of which urges defendant could not be held liable as principal upon a statutory bond as to which six months limitation for suit had expired.

■ Initially it is argued plaintiff's petition was a simple suit upon a statutory bond, upon a subcontract from defendant. The only basis for recovery against Gragg was upon the bond, as to which the statute of limitations provided under 61 O.S.1961 § 1 et seq. had expired. Part of this argument apparently assumes more than six months elapsed between completion of the work and bringing suit. The evidence concerning actual completion did not positively establish a final completion date. As shown by the evidence, there were three dates which could have been treated as completion date for purposes of setting the statute in motion. Plaintiff's evidence established satisfactory completion of the work but no final date, nor was a completion date alleged in the petition.

The bonding company had answered alleging discharge of the bond by full compliance, and the further affirmative defense of the statute of limitations. No such affirmative defense was made by Gragg, which simply filed general denial of the petition. Upon close of plaintiff's evidence, the bonding company moved for directed verdict upon grounds of failure of the cause of action for lack of evidence, and because barred by limitations. This motion was overruled, but reserved for later consideration. Gragg demurred to the evidence upon grounds of failure to support plaintiff's cause of action, and because the statute of limitations "* * * applied to the bonding company is comparable to the land laws of the State of Oklahoma and the Statute of Limitations in this particular in-

stance has run against the principal contractor herein, which is defendant, Gragg Construction Company."

The second and third contentions also are directed against granting a directed verdict for plaintiff and are considered together. The first argument urges Gragg's nonliability as principal upon the bond under the six months statute of limitation provided by 61 O.S.1961 § 2.

■ There is no more settled rule than that where the pleadings do not show upon their face a cause of action is barred, the bar of limitations must be specially pled in order to be available as an affirmative defense. The defense cannot be raised by demurrer to the evidence. Where not specially pleaded such defense is waived, and will not be considered when raised initially on appeal. Marks v. McCune Const. Co., Okl., 370 P.2d 560. In this connection see O. K. Butler Const. Co. v. Bentley, 205 Okl. 225, 237 P.2d 886, where we pointed out the statute supra, makes no requirement for the petition to allege the action has been brought within the time required by law. Having waived the defense of limitations by failure to affirmatively plead and rely thereon, the attack upon the instructed verdict on such ground lacks substantial merit.

The further argument under proposition 2 arises from language in instruction No. 5 that Gragg and defendant "* * * actually were in a joint enterprise and an agency relation existed, and Gragg Construction Company is estopped from denying its liability to the plaintiff. * * *" Proposition 3 attacks the instructed verdict on grounds plaintiff presented no issue of joint enterprise. Proposition 4 asserts the trial court erred in holding violation of department regulations (by Gragg and defendant) against subletting created a new relationship of joint venturers as between them and third parties. The basis of each contention and argument being the court's reference to "joint enterprise", the contentions are combined for consideration.

■ Argument urging failure of the pleadings to advance any theory upon which to base a finding of "joint enterprise" or existence of agency relationship is not decisive. Evidence showing these parties jointly engaged under Gragg's name in bidding highway contracts, which were to be performed by defendant under subcontract, was admitted without objection. Such evidence, even if not strictly within initial issues presented by the pleadings, properly was given weight for all purposes as though admissible originally, and the trial court was entitled to consider the pleadings as amended and conforming to such proof. It was such a matter as could have been amended before or after close of the evidence and, if warranted by the testimony, the trial court could consider it amended to conform to the testimony whether requested or not. Harris v. Newcombe, 56 Okl. 741, 156 P. 666; Miller v. Bain, 100 Okl. 178, 229 P. 140.

■ Thus, where amendment of the pleadings to conform to the proof should have been allowed, the judgment will not be reversed on appeal. Am. Nat. Ins. Co. v. Rardin, 74 Okl. 146, 177 P. 601; Mead v. Mead, Okl., 301 P.2d 691; Gilkes v. Gilkes, Okl., 389 P.2d 503. This rule provides sound ground for denying the claim for reversal based upon the trial court's action in this respect.

Remaining arguments, based upon the trial court's reference to "joint enterprise", provide no basis for reversal of judgment in plaintiff's favor. At this point it should be observed Gragg's position is premised upon asserted lack of contract applicability so far as those dealing with plaintiff was concerned. However, in respect to rights and liabilities between the parties on the Pushmataha project it is urged the written contract was conclusive of all rights. Gragg's statement that "'reason is the soul of law'" is most apropos.

■ Whether the court's use of the term, joint enterprise, justifies the significance attached in Gragg's argument is not of controlling importance. If considered as a grammatically descriptive phrase disclosing an agency relationship Gragg was not prejudiced thereby. If treated as categorization of a legal relationship, the trial court's determination of the matter is supported by decisional law. In Pfleider v. Smith, Okl., 370 P.2d 17, 20, we delineated three elements requisite to determining existence of a joint venture relationship:

"(1) there must be joint interest in the property by the parties sought to be held as partners; (2) there must be agreements, express or implied, to share in profits and losses of the venture; and (3) there must be actions and conduct showing cooperation in the project. None of these elements alone is sufficient. * * *"

The prime contract obligated Gragg to perform the designated contract according to specifications and requirements of the highway department. This contract was part of the agreement between Gragg and defendant by reference. The reciprocal rights and obligations of these parties established their requisite joint interest.

Gragg's limited participation in the prime contract is basis for the assertion no agreement existed as to sharing profits or losses. This argument overlooks both Gragg's ultimate responsibility for performance under the prime contract, the right reserved under subcontract to look to defendant for completion costs necessary upon a defaulted project, and the right to reimbursement for loss incurred. Argument that neither conduct nor actions showed Gragg's cooperation upon the project such as would support the factor showing joint venture is not supported by the record.

■ In O. K. Boiler & Welding Co. v. Minnetonka Lbr. Co., 103 Okl. 226, 229 P. 1045, syllabi 2 and 4 state:

"The status may be inferred from the purpose of the enterprise, the acts, and conduct of the parties in relation to the engagement. In some cases the acts and conduct of the parties may speak above

the expressed declarations as to the creation of the undertaking and its scope.

"Each member of the joint adventure acts for himself as principal and as agent for the other members, within the general scope of the enterprise. The law of partnership applies in settlement of the questions arising among the parties, and in relation to third parties. In substance, it is the law of principal and agent."

Also see Dobbins v. Texas Company, 136 Okl. 40, 275 P. 643; McKeel v. Mercer, 118 Okl. 66, 246 P. 619; Knight v. Cecil, 110 Okl. 57, 235 P. 1107.

The quoted case points out the law of principal and agent underlies conduct of the partnership, both between the partners and third parties. Whether a joint enterprise has been created is determinable from apparent purposes, and acts and conduct of parties to the undertaking, which may speak more strongly than the express declarations. After the parties create and engage in a joint enterprise, even though a single transaction, the law of partnership applies to questions arising between the parties or in relation to third parties. This analysis adequately expresses the principles which control the instant matter.

The first contention urged by appellants concerns the subcontract executed between Gragg and defendant covering the Pushmataha contract. This agreement obligated defendant to reimburse Gragg for all liability imposed by defendant's failure to perform all obligations required under the prime contract. The contention and argument urge error in the trial court's refusal to enforce the contract according to its terms. The essential provisions of the contract, noted earlier, support Gragg's claim for enforcement of the contract as executed.

■ The terms of that contract were not disputed. The evidence showed defendant was severely behind schedule, and admittedly could not complete the dirt work upon the project without assistance by Gragg extending credit for defendant to secure needed equipment. Evidence whether the written contract was altered by subsequent executed oral agreement was in sharp conflict although no contract provision obligated Gragg to assume additional risk. Plain terms of the contract entitled Gragg to look to defendant for loss occasioned by failure to perform. Any oral modification of that contract which relieved defendant of all responsibility necessarily would have to be supported by an additional consideration in order to be enforceable.

■ Neither oral nor written contracts are enforceable without consideration. Performance of a duty imposed by law, or of an obligation a party already is legally bound to perform, is not sufficient consideration to support a contract. Home Owners' Loan Corp. v. Thronburgh, 187 Okl. 699, 106 P.2d 511; Watson v. American Creosote Works, Inc., 184 Okl. 13, 84 P.2d 431.

■ The terms of defendant's subcontract defining nature, extent and effect of the parties' duties and obligations were clear and unambiguous. Any construction or interpretation to be placed thereon was a matter of law for the trial court. Rush v. Champlin Refg. Co., Okl., 321 P.2d 697; Van Horn Drug Co., Inc. v. Noland, Okl., 323 P.2d 366. For these reasons we are of the opinion the trial court erred in failing to enforce the contract executed by these parties according to the specific terms.

The conclusions stated obviate need for consideration of other matters urged on appeal. The judgment entered for plaintiff upon the instructed verdict is affirmed. The judgment entered upon the jury verdict in favor of defendant upon his cross-petition is reversed and the cause remanded for new trial.

IRWIN, C. J., and DAVISON, WILLIAMS, BLACKBIRD, JACKSON and LAVENDER, JJ., concur.

McINERNEY, J., concurs in result.