Doug MARTIN, Appellant,

v.

CHAPEL, WILKINSON, RIGGS, AND ABNEY, et al., Appellees.

L. Mark NARDYZ, Jr., Appellant,

v.

CHAPEL, WILKINSON, RIGGS, AND ABNEY, et al., Appellees.

No. 53846.

Supreme Court of Oklahoma.

Nov. 10, 1981.

---

Doug Martin, pro se.

John W. Klenda, Tulsa, for appellant Nardyz.

Deryl L. Gotcher, Jones, Givens, Gotcher, Doyle & Bogan, Inc., Tulsa, for appellees.

OPALA, Justice:

The issue presented in this appeal is whether the trial court erred in granting summary judgment. We answer in the affirmative. While this cause must be remanded for further proceedings, the trial court did not err under the facts before it in determining there was no genuine controversy as to the issue of joint venture.

This is an appeal from summary judgment in two legal malpractice actions brought by former clients against a law firm.[1] The conflict between the former clients—Doug Martin [Martin] and Mark Nardyz [Nardyz] [also referred to as Buyers]—and the law firm stems from the firm's representation of their interests and that of a third party, Jason Ott [Ott], in the purchase of a majority block of capital stock in a bank. The cases were consolidated for trial.

The parties are in strong disagreement as to whether Martin, Nardyz and Ott were acting in concert *qua* partners or joint venturers—as urged by the firm—or whether they were acting in their individual capacities—as alleged by the buyers—when they sought legal representation in the bank stock transaction. At a partial closing of the stock purchase, Ott, with the law firm's assistance, had 4,300 shares of the bank stock placed in his name only. Martin and Nardyz alleged this was done without their knowledge or approval; and upon their dis-

---

1. The clients sued both the law firm *qua* partnership and the individual lawyers in the firm.

covery that their names were not shown on any of the stock certificates, the buyers immediately voiced their objections to Ott and to the law firm. When the law firm allegedly failed to represent the buyers' interests at a stockholders' meeting five months later, the buyers terminated their attorney-client relationship with the law firm. The buyers then brought separate actions for professional malpractice against the law firm.

Both the law firm and the buyers moved for summary judgment under District Court Rule 13.[2] Their motions were overruled. Pretrial conferences were held, and the case was set for jury trial. At the law firm's request, to which the buyers excepted, the court held an evidentiary hearing on the issue of an agency relationship between the buyers and Ott.

After the hearing the court granted summary judgment in favor of the law firm and determined that (1) the buyers and Ott entered into a joint venture to purchase the bank stock, and collectively employed the law firm to represent them, without disclosing the details of their relationship *inter se.* (2) Ott instructed the law firm concerning the stock transfer at the time the transfer was made and, from the facts and circumstances, he was also acting for the buyers. There was no evidence that the law firm knew that the buyers disagreed with Ott's instructions either before or after the stock transfer. The trial court's determinations clearly indicated that summary judgment was based solely on the fact that the buyers were bound by the acts of Ott as a co-venturer with the buyers. The buyers bring

this appeal from the summary judgment in favor of the law firm.

## I.

Summary judgment is provided for in Rule 13, Rules of District Courts for Oklahoma.[3] It was formulated to allow prompt disposition of cases in which material facts are not in dispute and in which a court could decide the case as a matter of law.[4] The summary judgment procedure is properly invoked when it serves to eliminate a useless trial but, of course, not when it would defeat a litigant's right to have a jury resolve a factual issue bearing significantly on the outcome of the case. The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue as to any material fact.

Since a summary judgment is an adjudication on the merits, affirmative defenses that go to the merits can be raised by this motion. When a defendant moves for a summary judgment on the basis of an affirmative defense, he must show that there is no substantial controversy as to the facts that are material to the affirmative defense and that the facts and inferences that may reasonably be drawn from them are in his favor.[5] When the moving party makes the appropriate showing, the adverse party must then demonstrate the existence of a material fact that would justify a trial of the issue.[6]

In the instant case, there is little doubt that the pleadings indicate the presence of conflicting issues of fact. Allegations in

---

2. The terms of Rule 13, Rules for District Courts of Oklahoma, 12 O.S.Supp.1973, Ch. 2, App., provide in pertinent part: "A party may move for judgment in his favor on the ground that the depositions, admissions, answers to interrogatories, and affidavits on file, filed with his motion or subsequently filed with leave of court show that there is no substantial controversy as to any material fact. The adverse party may file affidavits and other materials in opposition to the motion. * * * The court shall render judgment if it appears that there is no substantial controversy as to any material fact and that any party is entitled to judgment as a matter of law. If the court finds that there

is no substantial controversy as to certain facts or issues, it shall make an order specifying the facts or issues which are not in controversy and direct that the action proceed for a determination of the facts or issues. * * * "

3. Supra note 2.

4. *Flick v. Crouch*, Okl., 434 P.2d 256, 262 [1967].

5. *Runyon v. Reid*, Okl., 510 P.2d 943 [1973].

6. *Weeks v. Wedgewood Village, Inc.*, Okl., 554 P.2d 780, 785 [1976].

Martin's first cause of action are: (a) acts of the law firm constituted negligence-based professional malpractice by its involvement in transferring the bank stock (sought to be acquired by three of its clients) in the name of only one client without securing approval of the other two; (b) withholding legal advice and assistance after objections to the stock transfer were made known to the law firm, and (c) failing to protect Martin's interests at a stockholders' meeting. In Martin's second cause of action, he alleges a wilful tort by malicious and fraudulent acts of the law firm in connection with matters arising from the bank stock purchase which occurred after the termination of the attorney-client relationship. Nardyz also sought damages for negligence-based professional malpractice as set out in four causes of action.[7] In answer to these petitions, the law firm denied the allegations and interposed the possible defenses of (a) the existence of an agency relationship between Ott and the buyers which authorized the law firm's obedience to the directions of Ott, (b) laches on the part of the buyers in waiting too long to assert their claim and (c) waiver and estoppel by acquiesence and ratification of the alleged negligent acts. As to Martin's second cause of action for wilful tort, the law firm interposed the defense of misjoinder of actions.

## II.

In both of these legal malpractice cases, the principal defense of the law firm was that the buyers could not be regarded to have been legally harmed because they were in the status of co-venturers with Ott.

Although we agree that under the facts and circumstances in the record the issue of joint venture is not in genuine controversy, this does not make the summary judgment impervious to reversal. This is so because there was a genuine issue of material fact as to whether the law firm had knowledge of Ott's limited authority to act for the buyers. See part III infra.

In assessing the trial court's disposition of the joint venture issue, we must view the evidence in the framework of the applicable law.

A joint venture is generally a relationship analogous to, but not identical with, a partnership, and is often defined as an association of two or more persons to carry out a single business enterprise with the objective of realizing a profit.[8] The essential criteria for ascertaining the existence of a joint venture relationship are: (1) joint interest in property, (2) an express or implied agreement to share profits and losses of the venture and (3) action or conduct showing cooperation in the project. None of these elements alone is sufficient.[9] The contributions of the respective parties need not be equal or of the same character, but there must be some contribution by each co-adventurer of something promotive of the enterprise.[10] Each member of a joint venture acts for himself as principal *and as agent for the other members within the general scope of the enterprise.*[11] The law of partnership and of principal and agent underlies the conduct of a co-adventurer and governs the rights and liabilities of

---

7. Nardyz sought actual damages in the first three causes of action for (1) lost opportunity to acquire bank stock (2) loss of his position as vice president of the bank and as a director of the bank and (3) for the value of his time and money expended to successfully defend a suit in the Supreme Court against the law firm for a conflict of interest when it sought to represent Ott and the Bank in a separate suit brought by the buyers. In the fourth cause of action, Nardyz sought punitive and exemplary damages for acts of the law firm as essentially set out in the first three causes of action.

8. *Taquena v. Bob Vale Painting Co.*, Okl., 507 P.2d 539, 542 [1973]; *Bosworth v. Eason Oil Co.*, 202 Okl. 359, 213 P.2d 548, 551 [1950].

9. *Gragg v. James*, Okl., 452 P.2d 579, 586 [1969]; *Pfleider v. Smith*, Okl., 370 P.2d 17, 20 [1962].

10. *Wickham v. Belveal*, Okl., 386 P.2d 315, 318 [1963].

11. *Gragg v. James*, supra note 9; *O.K. Boiler & Welding Co. v. Minnetonka Lumber Co.*, 103 Okl. 226, 229 P. 1045, syllabi 2 and 4 [1924].

co-adventurers and third parties as well.[12] The law requires little formality in the creation of a joint venture and the agreement is not invalid because it may be indefinite with respect to its details.[13]

 The essential test in determining the existence of a joint venture is whether the parties intended to establish such a relation. In the absence of an express agreement setting forth the relationship, the status may be inferred from the conduct of the parties in relation to themselves and to third parties.[14] As to third parties, it is the legal and not the actual intent which controls.[15] The parties may be estopped in favor of third persons from denying that they are joint venturers, even though they never intended to become such. As to third parties, it is the intent to do those things which constitutes a joint venture that usually determines whether the relation exists.[16]

 In placing the conduct of these parties in the framework of a joint venture, no one factor is determinative; the facts must be examined as a whole. The buyers [Martin and Nardyz] had initially secured an option to purchase stock in the First Bank. They wanted to acquire a controlling interest in the bank stock and brought Ott into the undertaking to help them secure the necessary financing in exchange for a share of the stock. The buyers and Ott used the legal services of the defendant law firm to prepare the necessary legal papers for the purchase of the bank stock as well as of the stock in an investment building corporation and all the interest in an insurance agency. The record does not reveal that the parties had a clear understanding as to how the stock would be divided at the time it was transferred to Ott's name. Absence of this fact is not critical as joint venture property may be held in the name of one member in a fiduciary capacity for the others.[17] Ott had engaged an auditing firm to go over the bank records to determine its financial status. He was primarily responsible for negotiations with the entities that were loaning money for the venture. Ott and the buyers, working in a cooperative effort, had as their main goal to participate in anticipated profits from purchase of the bank stock. Implicit in this relationship was an agreement to share in the losses.

Although the buyers disclaim any intention to become joint venturers, this status is clearly inferred from the purpose of the enterprise and the conduct of the parties in relation to the undertaking. In short, the acts and conduct of the parties *inter se* speak more strongly than the expressed declarations of the buyers as to the existence of their status as joint venturers.

 The buyers contend that the trial court erred in not ruling on their motion to strike certain materials filed in support of the law firm's summary judgment motion. The materials were said to have been filed in contravention of the court's ruling at pretrial wherein the firm was ordered to obtain the buyers' stipulated approval before attaching the materials to the motion. We cannot agree there was error because the record is silent as to the pretrial disposition. In a ruling that is *dehors* the record, the burden is on the complaining party to

12. *Commercial Lumber Co. v. Nelson*, 181 Okl. 122, 72 P.2d 829, 830 [1937]; *O. K. Boiler & Welding Co. v. Minnetonka Lumber Co.*, supra note 11; *Twyford v. Sonken-Galamba Corporation*, 177 Okl. 486, 60 P.2d 1050, 1052–1053 [1936].

13. *Hancock v. Stradley*, Okl., 482 P.2d 580, 583 [1971].

14. *Coryell v. Marrs*, 180 Okl. 394, 70 P.2d 478, 479 [1937]; *Campbell v. Smith*, 106 Okl. 26, 232 P. 844, 846 [1925].

15. *Youngs v. Case*, Okl., 341 P.2d 572, 577 [1959]; *Newman v. Jackson*, 192 Okl. 461, 138 P.2d 76, 77 [1943].

16. *Youngs v. Case*, supra note 15; *Twyford v. Sonken-Galamba Corporation*, supra note 12.

17. *Lasry v. Lederman*, 147 Cal.App.2d 480, 305 P.2d 663, 667 [1957].

put it of record.[18] The buyers have failed to meet this burden.

### III.

■ While the trial court's summary judgment rested on a finding that no genuine controversy exists with respect to the key issue of joint venture, the dispositive issue which is in dispute was whether the law firm had knowledge or should have had knowledge of the limited authority of Ott to act on behalf of the other co-venturers—which notice allegedly had been imparted by the buyers' oral declarations to a member of the law firm. As to that fact issue, we hold, there existed a genuine controversy.

■ When third parties deal with a co-venturer in good faith and without knowledge of any limitation upon his authority, the law presumes him to have power to bind his associates by such contracts as are reasonably necessary to carry on the business in which the joint venturers are engaged.[19]

In an affidavit supporting his motion for summary judgment, Martin stated that he had voiced his concerns to the law firm about the ethics of Ott and his belief that Ott may cause problems. He further stated that he repeatedly told the law firm that Ott was not authorized to act in his behalf. It was not until after the stock transfer had taken place that Martin said he was first made aware that the stock had been placed in Ott's name.

The buyers then employed another lawyer [Graves] to help them resolve the matters between themselves and Ott and First Bank. The language in two letters prepared by Graves—one directed to First Bank and the other to another bank financing the venture—tended to indicate that the buyers had agreed beforehand to the transfer of the stock to Ott's name. The record shows that Graves could not recall whether his clients [the buyers] had seen the letters or approved the language used before sending them out. According to him the purpose in preparing the letters was to give notice that the buyers claimed an interest in the bank stock then held in Ott's name. In refuting prior knowledge of, or agreement as to, the transfer of the stock to Ott, the buyers refer to a letter-brief written by counsel for the law firm in which it was stated that "[w]hen they [the buyers] discovered the stock had been issued to Ott", they were assured by Ott "that the matter would be taken care of at some future date." The buyers argue that this would support their position that the law firm was aware they had given no prior approval to have the stock transferred to Ott's name. A member of the law firm testified to the contrary at the evidentiary hearing.

From the evidentiary materials in the record, we cannot say there is no genuine issue as to whether the law firm had prior knowledge of Ott's limited authority to act on behalf of the co-venturers. Even though the stock purchase agreement did not specify the amount each was to receive, the law firm cannot claim to have exculpated itself by placing the stock in the name of Ott merely as a fiduciary for the joint venture if it did, in fact, have knowledge that limitations on Ott's authority had been expressly placed by the other co-venturers.

### IV.

The trial court's order granting summary judgment was based solely on the fact that the buyers were co-venturers with Ott and were hence bound by Ott's representations to the law firm. It is clear from the order that in reaching its decision to grant summary judgment the court did not consider any other affirmative defenses raised by the law firm.

We note the amended petitions by Martin and Nardyz contained causes of action unrelated to matters involving the legal status of Martin, Nardyz and Ott as co-venturers

---

18. *Brougham v. Independent Potash & Chemical Co.*, 200 Okl., 659, 199 P.2d 211, 212 [1948].

19. *Gragg v. James*, supra note 9; *Cassidy v. Saline County Bank*, 14 Okl. 532, 78 P. 324 [1904].

in the purchase of the bank stock. Martin's second cause of action alleges a wilful tort by acts of the law firm occurring after the termination of the attorney-client relationship. Nardyz, in this third cause of action, seeks actual damages sustained when he successfully defended, on appeal the disqualification status of the law firm because of an alleged conflict of interest in representing Ott against the buyers in a separate, related action.

 The record does not reflect that the law firm has attempted to show in their briefs on summary judgment, or by evidentiary materials attached to their motion, that there is an absence of a genuine issue of material fact as to the issues raised in these causes of action. While it is not crystal-clear that the summary judgment in favor of the law firm did in fact include these last-mentioned causes of action, we will assume for the purpose of our pronouncement that it did. On that assumption, we must reverse the trial court's decision as to those separate claims as well, because, with respect to them, the finding of a factually undisputed joint venture will not support a summary judgment.

The judgment is reversed and cause is remanded for further proceedings consistent with this pronouncement.

IRWIN, C. J., BARNES, V. C. J., and LAVENDER, DOOLIN and HARGRAVE, JJ., concur.

HODGES and SIMMS, JJ., dissent.