## MEYER & GREENWALD CONSTRUCTION CO. v. SALINA GRAVEL CO.

No. 17915.  Opinion Filed March 12, 1929.

Rehearing Denied May 14, 1929.

Frank L. Montgomery and Malcolm E. Rosser, for plaintiff in error.

Ed K. Brook and Archibald Bonds, for defendant in error.

BENNETT, C.  Meyer & Greenwald Construction Company, a copartnership, brought suit in district court of Muskogee county, Okla., against Salina Gravel Company, a corporation, upon five separate causes of action, each predicated upon a promissory note for $500, executed by defendant and payable to plaintiff.  The first note was payable September 7, 1924, and the remaining notes were payable at 60-day intervals thereafter, and secured by chattel mortgage covering a certain steam shovel for balance of purchase price, of which the notes were given. Copies of notes and chattel mortgage are attached to petition and made a part thereof.  Defendant's answer pleads that the sale of said steam shovel was brought about by false and fraudulent statements and representations made by plaintiff to defendant who did not have opportunity to inspect the machine.  These alleged false statements consisted in part of representations that the machine was in excellent condition, loading from 400 to 500 cubic yards of hardest gravel per day; whereas, in fact, the machine was in bad condition, had no power, and was practically worn out, and that it would not load the material for which it was purchased.

Defendant tendered back the machine, demanded cancellation of unpaid notes, recovery of $1,000 down payment, and the sum of $346.43 freight paid by defendant.  A reply by general denial was filed, and the following is sufficient of the testimony for the purpose of this appeal.

J. A. Barbre, president of Salina Gravel Company, testified that he had known Meyer

Greenwald several years; talked with him about April 1, 1924, relative to purchase of a 5/8 yard steam shovel; had seen him before, and had talked with him about the machine; thereupon certain letters and telegrams were introduced between plaintiff and defendant with reference to purchase of the machine. These letters and telegrams on the part of defendant were seeking to ascertain the condition of the shovel, its capacity, size, make, and the kind of work it would do, and the terms to be had if a purchase should be made; also certain communications on the part of plaintiff to defendant setting out that the machine was in excellent condition, was doing fine work, and also indicating that if any operator for the shovel be needed, the plaintiff could secure the services of one who had formerly operated the machine. These communications resulted in a purchase of the machine by defendant, and subsequent delivery of the same about the middle of July, 1924.

There is much evidence of defendant and defendant's steam shovel engineer and others tending to show that upon arrival of the machine same was not in good condition, but defendant, nevertheless, made prolonged efforts to cause same to be operated successfully, and that certain repairs were made and even a change of location of the machine was made in the hope that it would operate more successfully upon another kind of material to be loaded; also showing that the defendant finally called upon plaintiff to send him the former operator of the machine to whom the machine was turned over for operation, but that the machine could not be made to operate successfully; that it could not be made to load more than about 30 or 35 cubic yards of material per day, whereas it should have loaded from 400 to 500 cubic yards per day; that for a period of 60 days' operation, the yardage handled by the machine was less than 2,000 cubic yards; that defendant placed reliance upon the statement of plaintiff that the machine was all right and could be operated successfully, and simply gave it every opportunity to work under various operators and under varying conditions. Finally the defendant decided, and so notified plaintiff, that the machine was unsatisfactory, worn out, without power, and would not perform properly, and also notified plaintiff that the sale had been brought about by the fraudulent misrepresentations and false statements of plaintiff, and that defendant would, on that account, rescind the contract and turn the machine back to plaintiff, from whom he de-

manded the return to defendant of the down payment of $1,000, and the amount of freight paid on the machine by defendant. It was further shown that defendant did not have opportunity for inspecting the shovel; that plaintiff was a skilled steam shovel man, and ought to have known and did know the quality and capacity of this machine, and that defendant relied upon the truthfulness of the statements made with reference to same, and but for that fact would not have bought the machine, and that he would have returned the machine sooner but for the fact that he relied upon the statements of plaintiff that it could be made to operate, and that defendant spent more than $1,000 in excess of the amount received for the entire gravel loaded by the machine in his constant effort to operate the same. Defendant's evidence also tended to show that the old operator recommended by plaintiff could not operate the same, and finally gave up in disgust saying that he could not get the machine to work properly.

The evidence on the part of plaintiff tended to show that the machine was in good condition and worked satisfactorily before it was removed from Louisiana to the defendant's gravel pit in Oklahoma, and that the notes representing the balance of the purchase money were signed up and forwarded to plaintiff after the arrival of the machine, and, after at least, some examination of the same; that the statements made by plaintiff with reference to the machine were in effect true; that he had no knowledge of any infirmity in the machine, and that it was capable of doing good work, but that the material in which the defendant sought to operate the machine was not gravel at all but rock, and on that account the machine would not operate properly. There was a great deal of testimony supporting the respective sides of this controversy.

At the conclusion of the testimony plaintiff moved the court to instruct the jury to find in its favor for the amount sued for. This was refused and upon submission of the case to the jury, a verdict was later returned in favor of defendant assessing recovery on its counterclaim at $1,000, but there was no recovery by defendant upon its counterclaim for freight amounting to $346.43. Thereupon judgment was rendered for the defendant in conformity with the verdict, and this appeal is prosecuted by plaintiff.

Plaintiff makes 15 separate assignments of error, but argues them in its brief under

ten heads. Nearly all of these assignments are based upon alleged errors of the court in the giving of certain instructions, or the refusal of the court to give certain instructions prayed, alleged to be prejudicial to plaintiff.

It should be observed that since the execution of the notes sued on is admitted, the gravamen of this lawsuit is the alleged fraud on the part of plaintiff. The petition alleges that plaintiff made certain representations with reference to the condition, quality, work, and capacity of this machine, and that these statements were false and fraudulent and made to defendant, who had no opportunity to know the facts, and by which false and fraudulent statements he was induced to purchase this machine; and after prolonged efforts to prove this machine, and after giving it every opportunity to perform, he discovered that the same was unfit; that it was not as represented; that it would not, and could not be made to do the work which plaintiff said it was capable of doing and was doing, and that on account of these false and fraudulent representations, defendant elected to rescind the contract, turn over to the plaintiff the machine, and to receive from plaintiff the consideration therefor, and the freight paid thereon; in short, to have both parties put in statu quo.

We think it clearly appears not only from the record but from the testimony and the briefs, that this was the theory upon which this lawsuit was founded and tried, and it seems, under the proof and under the pleadings, that this was the proper theory upon which same should have been tried. And, in passing, we may say that the evidence was sufficient to be passed upon by a jury on the issues as to the fraud of plaintiff and also upon the issue as to whether or not defendant, within a reasonable time, under all the circumstances, rescinded or offered to rescind the trade.

Now, upon this theory it is clear that the court should have instructed the jury upon the question of fraudulent representations, and upon the right of defendant to rescind and the timeliness within which rescission might be made, waiver, etc. Numerous instructions were given by the court dealing with these questions, the correctness of all of which at this time it is not necessary for us to determine. We think, however, that the court became somewhat confused and digressed from the theory of the case in his instructions Nos. 7 and 8, which are as follows:

"You are instructed that if you find from the evidence in this case that the plaintiff knew for what purposes the shovel in the controversy was to be used by the defendant, that there is an implied warranty that the machine would function and perform the purposes for which it was purchased, and that if you should find from the evidence in this case that the machine failed to faithfully perform the work for which it was purchased, then there would be a breach of implied warranty of the contract."

"You are instructed further that if you find from the evidence in the case that the defendant had no opportunity to inspect the shovel, or from his situation an inspection was impracticable, but that he bought said shovel relying upon the judgment of the plaintiff that it would be suitable for the purposes for which it was bought, and that the plaintiff knew the purptses for which it was bought and the character of the material which it was to handle and that under the circumstances the defendant relied upon the judgment of the plaintiff, and that said shovel would not do the work for which it was purchased, then you should find that there was an implied warranty on the part of the plaintiff, and that there has been a breach of same, and that the defendant has a right to recover from the plaintiff the amount which he has paid out on the purchase price of said shovel and the amount of freight paid out thereon."

Defendant, in his counterclaim, was suing plaintiff for a tort and seeking to rescind a contract which, in fact, from the standpoint of the former, never existed, because he claims it was predicated upon fraud. Under those circumstances the law gives to the injured party a right to abrogate the entire colorable contract conditioned only: First, that he act within a reasonable time after discovery that he has been imposed upon; and second, that he place his opponent in statu quo an nearly as may be. This right of rescission does not arise out of, but is in derogation of, the contract. If the contract were induced by fraud, then, as against one wronged thereby and who makes timely and proper protest and offers to rescind, the contract never existed. On the other hand, the attempt to recover for the breach of the contract by defendant presupposes the existence of that contract and in this case the effort to recover for the breach of the implied warranty, or, for that matter, the express warranty, presupposes the existence of either an implied or an express warranty, and those necessarily must be based upon an existing contract.

Section 5079, C. O. S. 1921, is as follows:
"Rescission, when not effected by consent,

can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

"First. He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind; and,

"Second. He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable, or positively refuses to do so."

Rescission places the parties in the position they would have occupied if the contract had never existed. Nash v. Minn. Title Ins. Co., 163 Mass. 574, 28 L. R. A. 753; Snow v. Alley, 144 Mass. 546, 59 A. R. 119; Roome v. Hennings, 21 N. Y. Supp. 938. The contract, being tainted with fraud, is voidable at his option, and if he sees fit to avoid it, he can no longer enforce any part thereof, and no action can be based on the contract itself. Westerfield et al. v. N. Y. Life Ins. Co. (Cal.) 61 Pac. 667; ilson v. New U. S. Cattle Co., 20 C. C. A. 241, 73 Fed. 994

"The action for damages for fraud is entirely distinct from any rights connected with a provision of the contract." 1 Page on Contracts, sec. 340.

"An action for a breach of the warranty is an action on the contract. whereas the gist of an action for fraud and deceit is not any breach of the contract, but that the party has been led to his damage by fraud into making it." Thompson v. Libbey (Minn.) 31 N. W. 52.

"A defrauded party cannot treat an alleged fraudulent representation as terms of a contract. Such representation constitutes merely grounds for avoiding liability under the contract and cannot be a covenant of the instrument itself." Holcomb & Hoke Mfg. Co. v. Jones, 102 Okla. 175, 228 Pac. 968.

See, also, Norris v. Colorado Turkey Homestone Co. (Colo.) 43 Pac. 1024.

In Holcomb & Hoke Mfg. Co., supra, paragraph 1 of the syllabus says:

"A party who, by fraud, has been induced to enter into a contract has, upon discovery thereof, a choice of two classes of remedy, to wit, rescission or affirmance."

And the third paragraph:

"A purchaser of chattels who has been induced to enter into contract by the fraud of his seller is not confined to the remedy of rescission. He may affirm the contract and sue for damages, but he cannot both affirm and disaffirm."

It will be observed, also, that the nature and extent of relief provided in the case of rescission is entirely different from the measure of damages arising from a breach of warranty of fitness. Under rescission the parties are simply put back in statu quo, but section 5989, C. O. S. 1921, reads:

"The detriment caused by the breach of a warranty of the quality of personal property, is deemed to be the excess, if any, of the value which the property would have had. at the time to which the warranty referred, if it had been complied with, over its actual value at that time."

And section 5990:

"The detriment caused by the breach of a warranty of the fitness of an article of personal property for a particular purpose, is deemed to be that which is defined in the last section, together with a fair compensation for the loss incurred by an effort in good faith to use it for such purpose."

We think, from the above authorities, it clearly appears that an instruction to the jury on the question of implied warranty permitting a recovery upon the breach thereof, and as well the amount of damage to be recovered in such case, was outside of the issues in the case at bar. Morever, in instruction No. 8, the amount of damages to be recovered upon the breach of an implied warranty of fitness is incorrectly stated to be "the amount which he (defendant) has paid out on the purchase price of said shovel and the amount of freight paid out thereon," whereas under sections 5989 and 5990, C. O. S. 1921, supra, the amount of damage in such case is defined to be the excess, if any, of the value which the property would have had at the time to which the warranty referred, if it had been complied with, over its actual value at that time, plus fair compensation for the loss incurred by an effort in good faith to use it (the property) for such purpose. So that, even if these instructions were pertinent, they are wrong as to the measure of damages.

"It is improper and erroneous for a court to give instructions to the jury which are not applicable to the case in any of its phases, but which are mere abstract statements of the law. This rule holds good although the instructions contain correct statements in this respect. for the jury is not concerned with what the law may be generally. but only with that very small portion of it which must govern the particular matter under consideration." Cosden Pipe Line Co. v. Berry, 87 Okla. 237, 210 Pac. 141.

See, also, Murry v. Merchants Southwest, etc., Co., 98 Okla. 270, 225 Pac. 547; Phelan

v. Barnhart, 75 Okla. 49, 181 Pac. 718; Bilby v. Owen, 74 Okla. 158, 181 Pac. 724.

We cannot say that the confusion and substantial error in the instructions as noted above were not harmful. There was a judgment in the trial court for the defendant for $1,000. If the contract was induced by fraudulent representations and if the defendant, without waiving and within a reasonable time after discovery of the imposition, offered to rescind (and these questions were for the jury to decide), the defendant was entitled to recover, and entitled to have his notes canceled, to recover his down payment, and also the amount paid for freight; whereas, if the defendant, having admitted execution of notes sued on, did not sustain his defense, the plaintiff was entitled to recover the amount of his notes sued on.

It is not necessary for us to severally discuss the other assignments of error, for we think the error discussed is sufficient to demand a reversal of the case, and in a subsequent trial the points raised may not appear again.

For the reasons given, it is adjudged that the trial court committed error in his instructions to the jury, for which the cause should be reversed and a new trial granted.

LEACH, DIFFENDAFFER, REID, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.