Eileen LeFLORE, Appellee,

v.

REFLECTIONS OF TULSA, INC., An Oklahoma corporation, Appellant.

No. 58166.

Supreme Court of Oklahoma.

Sept. 17, 1985.

Parks & Beard by Michael J. Beard and Curtis A. Parks, Tulsa, for appellee.

Dyer, Powers, Marsh & Armstrong by Tom L. Armstrong and Joe M. Fears, Tulsa, for appellant.

HODGES, Justice.

The present case arose out of a beauty contest entitled the "Miss Legs of Tulsa" in which Eileen LeFlore (appellee) out of 37 contestants was adjudged to have the most beautiful legs in the City of Tulsa. The contest was advertised by Reflections of Tulsa, Inc. (appellant), a restaurant and nightclub, through radio station KELI. The relevant part of the advertisement in dispute states: "And, the first prize winner receives an all expense paid Windjammer Cruise to the Caribbean for two." Other advertisement represented that the winner would also have an opportunity to compete in a national contest.

After appellee won first place in the contest, an "I love you, Tulsa" party was held at Reflections in which radio station KRAV (FM–96) advertised and Velvet Closet, a Tulsa clothing store, sponsored a fashion show. The relationship of KRAV, Velvet Closet and appellant in regard to the "I love you, Tulsa" party is also in dispute. KRAV's advertisement of the party stated that Miss Legs of Tulsa would appear and model swimwear at the party. Appellee testified that she was never asked to appear or model at the party nor consented to the use of her name in the advertisement. She further testified that she attended the party after hearing about it from a person who had heard the radio advertisement. She claims because she was not even introduced at the party she suffered embarrassment.

Appellee brought four actions, the first of which alleges she was fraudulently induced to enter the Miss Legs of Tulsa contest by an advertisement, known by appellant to be false, which represented that an all expense paid cruise for two would be given to the winner. She alleges that this representation with regard to the all expense paid cruise to the winner was fraudulent in that Reflections did not at any time intend to pay transportation to and from the point of embarkation. Eileen testified that after winning the contest she was given tickets for the cruise but was not provided with transportation to and from the point of embarkation. Appellee asserts the advertisement was false and misleading and was relied upon to her detriment in violation of 21 O.S.1981 § 1502. She seeks actual damages of $900 for the cruise, $1200 for transportation to and from the place of embarkation, and $15,000 punitive damages.

Appellee's second cause of action also alleges false misrepresentation by appellant. Appellee claims Reflections, through its agents, informed her that she would represent Reflections in the 1980 Miss Legs of America Beauty Contest and that all expenses to and from the national contest would be paid and accommodations therefor. She seeks actual damages of $1,500 for all expenses concerning the contest and $15,000 punitive damages.

In the third cause of action appellee sought recovery for breach of contract, seeking actual damages of $900 for the cruise and $1,200 for transportation therefor. Subsequently, appellee dismissed her claim for breach of contract, electing to proceed in tort for fraudulent inducement.

Appellee's fourth cause of action is for invasion of privacy in connection with the unauthorized use of her name and title in the advertisement through KRAV radio which represented that Miss Legs of Tulsa would be present and model at the "I love you, Tulsa" party. This claim is under the authority of 21 O.S.1981 §§ 839.1 and 839.-2. She asks for $4,000 actual damages for embarrassment and emotional and mental suffering and $18,000 punitive damages.

The trial court dismissed Eileen's second cause of action insofar as it related to actual damages for failure to provide attendance or accommodations for her at the national contest, but not the portion of the allegations and testimony concerning the lack of notice of such contest to her.

The jury found in favor of Eileen on her first and fourth causes of action in the amount of $6,136 actual damages and $20,000 punitive damages, and judgment was rendered on the verdict. Reflections commenced this appeal and the Court of Appeals, Division # 3 reversed, holding:

1) The trial court erred in refusing to strike appellee's fourth cause of action for invasion of privacy and all evidence relating thereto because the evidence in the record does not sustain the finding of a joint venture between KRAV, Reflections and Velvet Closet; and an action under 21 O.S.1981 § 839.2 must be to prevent or restrain the use of one's name, portrait or picture where a defendant has knowingly violated § 839.1. Exemplary damages under § 839.2 are allowed only in conjunction with an action to prevent or restrain the use of a person's name, portrait or picture. The trial court improperly allowed the jury to consider Eileen's cause of action for invasion of privacy as the action was not to restrain or prevent the use of her name.

2) The trial court erred in not directing a verdict for Reflections on the issue of fraud because Eileen neither pleaded nor proved any damages proximately caused by the alleged fraudulent inducement. The damages alleged could be for breach of contract and those for an alleged breach of contract do not support a cause of action for fraudulent inducement.

3) The issue of punitive damages should not have gone to the jury, there being no actual damages proven. The jury instruction contained at least two errors. First, the maximum amount of punitive damages requested should have been reduced because the trial court issued an instruction for punitive damages which combined three causes of action, one of which the court had already found no evidence of actual damages existed (actual damages relating to the national contest). Second, the instruction regarding damages for invasion of privacy was erroneous in that there was no finding of a joint venture and the action for damages was not brought in conjunction with

an action to prevent and restrain the use of her name.

4) All evidence relating to the national Miss Legs contest should have been stricken as the court ruled the evidence would not sustain an award of actual damages and thus without actual damages, no action could be maintained.

5) Because no actual damages were appropriately awardable under the fraudulent inducement action, damages were excessive. The damages alleged flowed from the breach of contract and appellee abandoned this cause of action.

We have previously granted certiorari to review the Court of Appeals' decision. Upon examination of this case, we find the Court of Appeals' opinion should be reversed except for the portion pertaining to the irrelevant evidence regarding the national contest, and the judgment of the trial court should be affirmed on condition as discussed below.

Eileen raises two issues on certiorari which this Court is to decide:

1) Whether or not a joint venture existed between KRAV, Reflections and Velvet Closet with regard to the "I love you, Tulsa" party, and if we answer this in the affirmative, whether or not appellee may maintain an action for invasion of privacy for damages without an accompanying injunctive relief or action to prevent or restrain appellant's use of her name under 11 O.S.1981 § 839.2.

2) Whether or not appellee, in her first cause of action, pleaded and proved damages which were the natural and probable consequence of the alleged fraudulent inducement.

I

■ We first address appellee's claim that her right of privacy was invaded by the unauthorized use of her name in the advertisement of the party. A determination must first be made as to whether or not a joint venture existed between Reflections, KRAV and Velvet Closet in regard to the party because the advertisement was

produced and broadcasted solely by KRAV. Appellant may only be liable for the alleged fraudulent radio advertisement as a joint venturer in the party for Reflections was not involved in either the procurement or the design of the advertisement. The law of partnership and of principal and agent applies in determining the rights and liabilities of co-adventurers and third parties. *Martin v. Chapel, Wilkinson, Riggs and Abney,* 637 P.2d 81, 86 (Okla.1981).

A joint venture has been defined in Oklahoma as a special combination of two or more persons where in some specific venture a profit is jointly sought without any partnership or corporate designation.[1] Three elements are necessary to establish the existence of a joint venture:

> 1) A joint interest in property (the contributions need not be equal or of the same character),
>
> 2) An express or implied agreement to share profits and losses of the venture,
>
> 3) Action or conduct showing cooperation in the venture. *Martin v. Chapel, Wilkinson, Riggs and Abney,* 637 P.2d at 85; *Gragg v. James,* 452 P.2d 579, 586 (Okla.1969).

The radio station KRAV hosted the "I love you, Tulsa" party at Reflections at which Reflections provided the facility, personnel, wine and cheese and Velvet Closet provided the entertainment. Therefore, the first element of contribution to the venture is satisfied.

With regard to the second element, Reflections asserts the party was apparently designed as a celebration of civic pride in the City of Tulsa and its inhabitants, a charitable venture, in which the only benefit these three businesses received was publicity. It also asserts there was no agreement to share in the profits of the party, nor was there any profit sharing.

Reflections admits, however, it received payment for beverages purchased at half price by the persons attending the party. Reflections also received a profit from the solicitation of club memberships among those attending but such profits were not shared with the other two businesses. Both Velvet Closet and KRAV received publicity in that the former provided a fashion show featuring its clothing and the latter promoted its station.

Appellant correctly points out that the profits accruing to the parties of an alleged joint venture must be "joint" and not "several." Citing *Commercial Lumber Co. v. Nelson,* 181 Okl. 122, 72 P.2d 829 (1937), the appellate court concludes and appellant maintains that under the facts of this case the profits accruing to the parties were several; the record does not contain sufficient evidence to show an intent by Velvet Closet, KRAV and Reflections to engage in a joint venture; and the existence of a joint venture was not supported by any competent evidence. We disagree.

Upon a closer examination we find a sharing of profits did exist between Reflections, KRAV and Velvet Closet. This facts and circumstances of this case are distinguishable from those presented in *Commercial Lumber Co. v. Nelson, supra,* relied upon by Reflections and the Court of Appeals. There, the defendant lumber company guaranteed the performance of a contractor's agreement to construct a house free of liens and claims. A subcontractor's employee was injured and subsequently sued. The State Industrial Commission found the lumber company was liable as a guarantor of the contractor of the house because it was found to be a joint venturer with the contractor. This Court reversed finding the lumber company, a mere supplier of building materials, was not a joint venturer with the contractor in the building venture because no sharing of profits existed. The lumber company was not sharing any profits derived from the building venture itself but rather was merely profiting on an expected sale of lumber to the contractor.

---

1. *Sinker v. Johnson,* 198 Okl. 343, 178 P.2d 608, 609 (1947); *Commercial Lumber Co. v. Nelson,* 181 Okl. 122, 72 P.2d 829, 830 (1937); *E.D.*

*Bedwell Coal Co. v. State Industrial Commission,* 157 Okl. 227, 11 P.2d 527, 531 (1932).

In the present case, Reflections did receive profits from the same source as KRAV and Velvet Closet. The fact the consideration received by each party is different is irrelevant. Endless possibilities may be envisioned wherein a venture might produce several types of benefits which could be apportioned among joint venturers in various manners. The profits of a venture may be characterized as severable in the sense that they are separate and distinguishable; however, they may still be characterized as joint in that they are derived from a common source, i.e., the joint venture. The "I love you, Tulsa" party was a venture which Reflections contributed directly to and received profits directly therefrom. Reflections attempted argument that it did not share in the expenses nor was involved in the party in any capacity other than providing facilities is negated by the fact that it did not receive any form of rent for providing the facility from the other businesses and it furnished free refreshments for the party. Likewise, the other businesses furnished their services free of charge. Reflections shared in the expenses and derived a benefit as did the other businesses.

Concerning the appellate court's finding that Reflections, KRAV and Velvet Closet never intended to engage in a joint venture, it is well settled that legal intent controls and no actual intent is needed as to third parties.[2] Parties may be estopped from denying that they are joint venturers even though they never intended to become such.[3]

█ The third element required is a display of conduct indicating cooperation in the venture. As previously noted, appellant furnished the facility, personnel and refreshments. KRAV assumed the cost of advertising the event and Velvet Closet provided the fashion show entertainment. Any benefit Reflections, KRAV or Velvet Closet received from the event was derived from the party itself. We find that there are sufficient facts showing cooperation in

the party. We, therefore, disagree with the Court of Appeals' finding that there was no competent evidence supporting the proposition that a joint venture existed. To the contrary, this state of affairs provides ample evidence with which a jury might find the existence of a joint venture. On a demurrer to the evidence, such as appellant made, the trial court must accept as true all evidence and reasonable inferences therefrom favorable to the party against whom the motion is directed, while disregarding conflicting evidence favorable to the defendant. *Neese v. Shawnee Medical Center Hospital*, 626 P.2d 1327, 1331 (Okla.1981); *Jordan v. General Motors Corp.*, 590 P.2d 193, 196 (Okla.1979). Facts are present in the instant case from which reasonable inferences could be drawn that a joint venture existed. Therefore, we determine the trial court appropriately refused to strike appellee's fourth cause of action on the grounds no joint venture existed.

In connection with appellee's fourth cause of action for invasion of privacy, a question exists as to whether or not the action was correctly brought in accordance with 21 O.S.1981 §§ 839.1 and 839.2. The appellate court citing no authority has intimated that an injunction must be contemporaneously brought with a damages action before damages are recoverable under 21 O.S.1981 § 839.2, which provides:

"Right of Action—Damages.

"Any person whose right of privacy, as created in Section 1 hereof, is violated … may maintain an action against the person, firm or corporation so using such person's name, portrait or picture to *prevent and restrain the use thereof, and may in the same action recover damages for any injuries sustained,* and if the defendant in such action shall have knowingly used such person's name, portrait or picture in such manner as is declared to be unlawful, the jury or court, if tried without a jury, in its discre-

---

**2.** *Martin v. Chapel, Wilkinson, Riggs, and Abney,* 637 P.2d 81, 86 (Okla.1981).

**3.** *Id.*

tion may award exemplary damages." (Emphasis added).

Appellee contends the appellate court's construction of § 839.2 is incorrect in that an injunction to prevent and restrain the use of one's name or likeness need not accompany an action for damages for invasion of privacy.

Since the concept of invasion of privacy was first proposed,[4] nearly every jurisdiction has recognized some variation of the tort action.[5] The Restatement (Second) of Torts § 652A delineates four categories of actionable invasions of privacy which have been expressly recognized by this Court in *McCormack v. Oklahoma Pub. Co*, 613 P.2d 737, 740 (Okla.1980):

1) Unreasonable intrusion upon the seclusion of another,

2) Appropriation of the other's name or likeness,

3) Unreasonable publicity given to the other's private life, and

4) Publicity that unreasonably places the other in a false light before the public.

In the present suit, Eileen alleges invasion of privacy under category (2) of the above listed categories, the *appropriation* for one's benefit or advantage of another's name or likeness. In effect, appellee claims that appellant appropriated her name for commercial purposes without her consent and should be liable in damages for such an appropriation.

New York was the first state to codify the cause of action for appropriation of an individual's name or likeness, with other jurisdictions such as Oklahoma, Utah, Virginia and Wisconsin following.[6] The statutes of New York and Virginia are most

similar to the statute in Oklahoma. The New York statute provides in relevant part:

"Any person whose name, portrait or picture is within this state for advertisement purposes or for the purposes of trade without the written consent first obtained as above provided *may maintain an equitable action in the supreme court* ... to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained..."[7] *(Emphasis added).*

The Virginia statute regarding the unauthorized use of a name or likeness of any person is very similar to the New York statute, and provides in pertinent part:

"A. Any person whose name, portrait, or picture is used without having first obtained the written consent of such person ... for advertising purposes or for the purposes of trade, such persons *may maintain a suit in equity* against the person, firm, or corporation so using ... *to prevent and restrain* the use thereof; *and may also sue and recover damages* for any injuries sustained by reason of such use."[8] (Emphasis added).

Research reveals no Virginia cases construing its statute or addressing the question of whether an action for damages exists without an accompanying action for injunctive relief against the party misusing another's name, portrait or picture.

However, the courts of New York have found with regard to that state's statute: "[U]nder it two separate actions may be maintained severally—one for damages and one for injunction—or an action may be brought for damages only, or for injunction

---

4. *See* Warren & Brandeis, *The Right to Privacy*, 4 Harv.L.Rev. 193 (1890).

5. *See* W. Prosser, *Law of Torts* § 117 at 802, 804 (4th ed. 1971) [hereinafter cited as W. Prosser]; Torts, VII. *Right of Privacy*, 6 Okla.City U.L.Rev. 299 (1981).

6. N.Y.Civ.Rights Law §§ 50, 51 (McKinney Supp.1984); 21 O.S.1981 §§ 839.1, 839.2; Utah Code Ann. §§ 45–3–4 (1981); Va.Code § 8.01–40 (1984); Wis.Stat.Ann. § 895.50 (West 1983).

7. N.Y.Civ.Rights Law § 51 (McKinney Supp. 1984); Savell, *Right of Privacy—Appropriation of a Person's Name, Portrait, or Picture for Advertising or Trade Purposes Without Prior Written Consent: History and Scope in New York*, 48 Albany L.Rev. 1, 43 (1983).

8. Va.Code § 8.01–40 (1984).

only, as the aggrieved person may be advised." *Ashley v. Gimbel Bros., Inc.,* 11 N.Y.S.2d 128, 170 Misc. 369 (Sup.Ct.1938) (citing *Riddle v. MacFadden,* 201 N.Y. 215, 220, 94 N.E. 644 (1911)). Also, in *Riddle, supra,* it was noted an equitable action may be made under New York's statute where only injunction is sought "but where there is in addition to the demand for equitable relief a demand for money damages which are assessed by a jury, we think the action is one to recover damages for personal injury..." *Riddle,* 94 N.E. at 945. (i.e., an action in law). These conclusions seem to militate against the proposition that the New York statute is purely an equitable action in which any damages recovered are merely ancillary.

In viewing these New York cases as instructive in our construction of 21 O.S.1981 § 839.2, we are mindful of the distinctions between the Oklahoma and New York statutes. In particular, 21 O.S.1981 § 839.2, contains the following phrase immediately after the provision for equitable relief, "may in the same action recover damages for any injuries sustained...." New York, as well as Virginia, on the other hand, provides after its equitable relief clause, "and may also sue and recover damages for any injuries," clearly indicating an action for damages may exist independently from an action to restrain and prevent the use of one's name or likeness.

■ The legislative history in Oklahoma is devoid as to where the distinguishable language "in the same action" originated and what purpose it serves; though we believe that it would be unreasonable to construe this language in a manner which without any apparent justification, prohibits a suit for damages alone. Where an ambiguity exists as to legislative intent, this Court should invoke the construction which is most reasonable.[9] Further, statutory construction which would lead to an absurdity must be avoided; rational constructions are preferred if language fairly

permits.[10] It would be absurd to interpret section 839.2 as mandating a suit for injunction before damages may be sought. Appellee argues this Court in *McCormack v. Oklahoma Pub. Co.,* 613 P.2d 737, 738 (Okla.1980) recognized an action for damages without an accompanying injunctive relief or action to prevent or restrain someone's use of a person's name. There, we did not expressly address the narrow issue presented herein. In light of the foregoing analysis, it is our opinion today section 839.2 creates a civil action in which a cause of action for damages may exist independently of an action for injunctive relief. Accordingly, appellee's failure to bring an action to prevent or restrain Reflections from using her name does not bar her present action for damages.

II

■ Based on the Court of Appeals' finding that appellee did not plead or prove any damages whatsoever as a consequence of the alleged inducement to enter the Miss Legs contest, it found the trial court erred in not directing a verdict for Reflections on the issue of fraud. Appellee's first cause of action in paragraph IX of her petition reads: "That due to the fact that the Defendant did not intend to supply the Plaintiff with transportation to and from the departure point of the Windjammer Cruise to the Caribbean, the Plaintiff has been damaged in the sum of $900.00 for the expenses of the Caribbean Cruise, and $1,200.00 for air fare [sic] which she would have been entitled to receive." Appellee additionally prayed for punitive damages. The determinative questions are whether appellee suffered damages, and, if so, whether the damages were the proximate result of the alleged fraudulent inducement.

The elements necessary for actionable fraud as delineated in *State ex rel Southwestern Bell Tel. Co. v. Brown,* 519 P.2d 491, 495 (Okl.1974), are:

9. *State ex rel. Otjen v. Mayhue,* 476 P.2d 317 (Okla.1970); *St. Louis-San Francisco Ry. Co. v. Caldwell,* 75 Okl. 153, 182 P. 688, 689 (1919).

10. *City of Norman v. Liddell,* 596 P.2d 879, 882 (Okla.1979).

1) that defendant made a material misrepresentation;

2) that it was false;

3) that when he made it he knew that it was false or made it recklessly, without any knowledge of its truth and as a positive assertion;

4) that he made it with the intention that it should be acted upon by plaintiff;

5) that plaintiff acted in reliance upon it;

6) that he thereby suffered injury; and

7) all of the above must be proved with a reasonable degree of certainty.

The gist of an action for fraud is the damage sustained is the natural and probable consequence of the acts charged, and not the fraud perpetrated. *McGuigan v. Harris*, 440 P.2d 680, 682 (Okla.1968); *Sharp v. Keaton*, 117 Okl. 131, 245 P. 852 (1926).

In Oklahoma, in order to recover damages under 23 O.S.1981 § 61 one must suffer detriment proximately caused by the breach of an obligation not arising from contract. Detriment is defined in 23 O.S. 1981 § 4 as "a loss or harm suffered in person or property." Eileen, therefore, to recover damages must have suffered a loss or harm as a result of the alleged fraudulent inducement by Reflections' advertisement for the Miss Legs contest. Appellee maintains that her detriment from the fraudulent inducement was the loss of the cruise and the roundtrip airfare. The Court of Appeals found that "[t]here was absolutely no evidence that … [Eileen] in any way altered her position to her injury or risk by entering the contest." We disagree. Eileen altered her position by entering the contest in reliance on the representation that the winner would receive an all expense paid cruise for two. Having found Eileen altered her position to her detriment, we turn now to address the issue of the proper measure of damages.

Two measures of damages have evolved out of fraud cases: 1) out of pocket damages and 2) benefit of the bargain damage.[11] The out of pocket rule, followed by the minority of jurisdictions, allows the plaintiff to recover the difference between the value given up and the actual value received where the former is greater. The benefit of the bargain rule, followed by the majority of jurisdictions, provides the plaintiff with the difference between the value the plaintiff gave and the amount the defendant represented the plaintiff would receive.

Under the out of pocket rule the plaintiff has suffered no loss and cannot recover, notwithstanding the misrepresentation, if she receives an amount equal to or greater than she gave. The out of pocket rule is consistent with the purpose of tort remedies, which is to compensate the plaintiff for a loss sustained and to restore the plaintiff to her former position, rather than to give her the benefit of any contract she has made with the defendant.[12] Nevertheless, because situations may arise in which this rule does not afford just and satisfactory compensation, the benefit of the bargain measure of damages has been adopted in nearly every state.[13] Some jurisdictions, however, recognize the existence of both measures and apply whichever theory that makes the plaintiff whole.[14]

Applying the benefit of the bargain rule in the present case, appellee is entitled to the amount appellant represented appellee would receive in return for her entering the contest, this being the amount appellee prayed for in her first cause of action. However, under the out of pocket rule, appellee could not recover because she has not suffered a loss as she received an amount greater than what she gave.[15] Therefore, the particular measure of damages invoked dictates whether or not damages exist at all.

---

**11.** W. Prosser, *supra* note 5 at § 110.

**12.** *Id.*

**13.** *Id.*

**14.** *Id.;* Restatement (Second) of Torts § 549.

**15.** Note: while the present case differs from the normal buy-sell scenario in which a seller misrepresents his product which the buyer has purchased for value, appellee, in this case, bargained for the *right* to win the Miss Legs of Tulsa contest and appellant received value by

Oklahoma, by decisional law, has adopted a form of the benefit of the bargain measure in fraud actions, allowing the plaintiff to recover the difference between the actual value received and the value the defrauded party would have had if it had been as represented. *A.A. Murphy, Inc. v. Banfield,* 363 P.2d 942, 946 (Okla.1961); *Calhoun v. Fisher,* 202 Okl. 542, 215 P.2d 846, 849 (1950); *Meyer and Greenwald Const. Co. v. Salina Gravel Co.,* 136 Okl. 214, 277 P. 274, 277 (1929); *Holcomb & Hoke Mfg. Co. v. Jones,* 102 Okl. 175, 228 P. 968, 971 (1924); *Howe v. Martin,* 23 Okl. 561, 102 P. 128, 132–33 (1909).

■ Eileen sought to recover the benefit of her bargain, i.e., an all expense paid Windjammer Cruise to the Caribbean for two. Whether fraud existed is a fact to be determined by the jury. *Johnson v. Eagle,* 355 P.2d 868, 870 (Okla.1960). We find sufficient evidence to support the jury's finding of such. Because Reflections represented an all expense trip would be given, Eileen, as the winner of the contest, is entitled to recover the damages sought in her first cause of action provided these damages were the "natural and probable result" of the fraudulent inducement. *State ex rel. Southwestern Bell Tel. Co. v. Brown, supra; McGuigen v. Harris, supra,* at 6820. In this case it is clear that the losses appellee incurred were the natural and probable result of appellant's misrepresentations. The fact the odds were small appellee would win the contest is irrelevant in determining whether losses were the natural and probable result of appellant's misrepresentations; it was almost inevitable the winner would incur damages from these misrepresentations.

■ In conclusion, because Oklahoma allows one who is fraudulently induced to enter a contract to recover up to the amount fraudulently misrepresented we hold the trial court did not err in failing to direct a verdict for Reflections on the issue of fraud.

appellee entering the contest. We find no reason why this measure of damages should not apply where a buyer purchases a chance to

## III

■ As to the question of whether the trial court erred in allowing the issue of punitive damages to go to the jury, we find the trial court did not err. This Court held in *Z.D. Howard Company v. Cartwright,* 537 P.2d 345, 347 (Okla.1975), punitive damages may be recovered where the breach of a contractual obligation amounts to an independent tort with elements of malice, actual or presumed. 23 O.S.1981 § 9. In addition, punitive damages may be assessed if the defendant is found guilty of knowingly using the plaintiff's name for advertising purposes under 21 O.S.1981 § 839.2. Having found sufficient evidence to support the award of actual damages for fraud and invasion of privacy, underlying causes of action for actual damages exist for which punitive damages may be assessed.

■ The established principles regarding the award of punitive damages is that they are allowed as punishment for the benefit of society as a restraint upon the transgressor and a warning and example serving as a deterrent to such conduct in the defendant and others similarly situated. *Oller v. Hicks,* 441 P.2d 356, 360 (Okla.1967). A punitive damage verdict is peculiarly within the province of the jury and will not be casually interfered with upon the claim of passion or prejudice. *Timmons v. Royal Globe Ins. Co.,* 653 P.2d 907, 919 (Okla.1982). Upon review a punitive damage award will not be held excessive and subject to remittitur "unless it appears to be grossly so or the result of passion, prejudice or improper sympathy." *Basden v. Mills,* 472 P.2d 889, 896 (Okla. 1970) (citing *Cities Service Oil Co. v. Merritt,* 332 P.2d 677 (Okla.1958)).

■ Appellant argues the jury found punitive damages on appellee's second cause of action regarding the national contest, which had been dismissed, without having any underlying actual damages. It contends the trial court committed preju-

receive personal property as opposed to personal property itself.

dicial error by failing to withdraw the $15,-000 punitive damages claim under the second cause of action and by failing to strike all reference to the national contest, in particular as it pertains to the jury's award of punitive damages. It further argues there was insufficient evidence of legal malice; thus, the trial court erred in not striking appellee's claim for punitive damages.

Regarding appellant's first argument, it is our opinion the circumstances of this case reveal an abuse of discretion by the trial court. We find the trial court committed prejudicial error in failing to strike all evidence regarding the national contest and permitting a claim for punitive damages based on the national contest to be submitted to the jury as the claim for actual damages was stricken. We affirm the position of the appellate court on this matter.

 We do find, however, that the award of punitive damages for fraud arising from the representations concerning the cruise and for invasion of privacy was proper in this case as the acts constitute a reckless disregard of appellee's rights. *Sunray DX Oil Co. v. Brown*, 477 P.2d 67, 70 (Okla.1970); *Cooperative Refinery Assn. v. Young*, 393 P.2d 537, 540 (Okla. 1964). In *Oller v. Hicks, supra,* this Court recognized the principle that "[w]hen a defendant's conduct is such as to amount to fraud, oppression or malice, or the act is wilfully and wantonly done with criminal indifference to the plaintiff's rights, exemplary damages are allowable."

In view of the fact we are unable to determine by the record before us the amount of punitive damages awarded proportionate to the fraud claim in connection with the national contest; and it appears the $20,000 punitive damages award is partially the result of the irrelevant evidence relative to such claim and the effect of that evidence influenced the jury so as to "create an improper sympathetic response of a damage award larger than reason dictates to be necessary to deter such conduct in" appellant and others similarly situated, we hold the punitive damage award is excessive. *Timmons v. Royal Globe Ins. Co.,*

*supra.* Consequently, it is our opinion the award is not properly responsive to the purpose of a punitive damage award. The judgment of the trial court, therefore, is affirmed upon the condition that appellee file in the trial court a remittitur of $7,500, leaving judgment for appellee in the amounts of $6,136 for actual damages and $12,500 for punitive damages. If appellee fails to file such remittitur, the judgment will stand reversed and the case remanded to the trial court for a new trial.

For the reasons herein set out we affirm the opinion of the Court of Appeals only as to its determination that the evidence relating to the national contest should have been stricken and otherwise reverse the opinion; and we affirm judgment of the trial court on the condition as stated.

DOOLIN, V.C.J., and LAVENDER, OPALA, WILSON, KAUGER and SUMMERS, JJ., concur.

HARGRAVE, J., concurs in part, Dissents as to Part III.

SIMMS, C.J., dissents, "I find no compelling reason to grant certiorari in this case."