**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 28, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

DAN ROGERS, individually and as
Personal Representative of the Estate
of Krystle Rogers, deceased; SHERRI
ROGERS, individually and as Personal
Representative of the Estate of Krystle
Rogers, deceased; JAMES BRAD
DOOLEY; TIFFANY HARPER;
ANNA CHRISTINE HARPER,

        Plaintiffs - Appellants,

    v.

ANHEUSER-BUSCH, INC., a
Missouri corporation; ANHEUSER-
BUSCH INC., doing business as
Anheuser-Busch Sales of Tulsa,

        Defendants - Appellees.

No. 06-6141

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. 04-CV-146-L)**

---

Robert W. Nelson (Thomas A. Paruolo, with him on the brief), of Whitten,
Nelson, McGuire, Terry & Roselius, Oklahoma City, Oklahoma; (Gary C.
Bachman, Stephen D. Bachman, Bryan G. Garrett, Holloway, Dobson &
Bachman, P.C., Oklahoma City, Oklahoma, with him on the brief), for Plaintiffs -
Appellants.

Richard C. Ford, Crowe & Dunlevy, Oklahoma City, Oklahoma, (James L.
Kincaid, Crowe & Dunlevy, Tulsa, Oklahoma, with him on the brief), for
Defendants - Appellees.

Before **BRISCOE**, **HARTZ**, and **GORSUCH**, Circuit Judges.

**HARTZ**, Circuit Judge.

On May 4, 2002, Krystle Rogers was killed and her passengers—James Brad Dooley, Tiffany Harper, and Anna Christine Harper—were injured when her vehicle collided with one driven by Randall Albright, III, who was intoxicated. Dan and Sherri Rogers (Krystle's parents and the personal representatives of her estate) and the passengers (collectively, Plaintiffs) filed suit on February 12, 2004, in the Western District of Oklahoma against Anheuser-Busch, Inc., a Missouri corporation, and Anheuser-Busch, Inc. d/b/a Anheuser-Busch Sales of Tulsa (which will be referred to individually and collectively as Anheuser-Busch). Plaintiffs alleged that Anheuser-Busch was liable under negligence and wrongful-death causes of action because its employees had served beer to Albright despite his noticeable intoxication at an event that it sponsored and for which it supplied beer. The district court granted summary judgment for Anheuser-Busch. Plaintiffs appeal. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

I.    **BACKGROUND**

A.    **The Calf Fry**

The Tumbleweed bar, which caters to young adults, is in Stillwater, Oklahoma, about ten miles from Oklahoma State University. Each year

Tumbleweed hosts a country-music concert called the Calf Fry. Anheuser-Busch, the brewer of Budweiser beers, paid $7500 to sponsor the Calf Fry held on May 3-4, 2002. The "Concert Sponsorship Agreement" (the Agreement) between Anheuser-Busch and the Promoter, TryAd Promotions and Jennifer Hasel, dated April 19, 2002, makes Anheuser-Busch the "exclusive title sponsor and the exclusive alcohol and non-alcohol malt beverage sponsor" of the event. Aplt. App. Vol. I at 64.

Under the Agreement the Promoter promised to spend at least $15,000 publicizing the event, and advertising materials were to contain such slogans as "Budweiser King of Beers Presents." *Id*. Vol. II at 402. Anheuser-Busch retained the right to approve "[a]ll public news media announcements prepared by Promoter concerning [Anheuser-Busch's] sponsorship" of the event, *id*. Vol. I at 65, and it reserved the right to terminate the Agreement if the Promoter or any of the event's performers "commits an act or becomes involved in a situation or occurrence which, in [Anheuser-Busch's] reasonable and good faith opinion, tends to provoke, shock or offend the community or any sizeable group or class thereof, or if [a performer] publicly disparages [Anheuser-Busch] or its products," *id.* at 66. Numerous signs at the event advertised Budweiser products. Tumbleweed apparently requested that Anheuser-Busch also hang signs that provided information about pricing and directions to food, and Anheuser-Busch may have provided these signs free of charge.

In the Agreement the Promoter promised that each component event of the Calf Fry would be attended by at least 1500 people and would have "adequate security and crowd control arrangements [and be] conducted in a manner that does not result in injury to persons or damage to property." *Id.* at 65. Also, the Promoter warranted that neither it "nor any person, firm or company affiliated with or otherwise related to [it] is a retailer of alcohol beverages and none of them has any ownership interest, directly or indirectly, in any alcohol beverage retail license." *Id.* at 68. The Agreement explicitly aimed to separate Anheuser-Busch's sponsorship and underwriting of advertising costs from its provision of alcohol. The Promoter warranted that

> [t]here is no agreement or understanding between [Anheuser-Busch] and Promoter that, as consideration for [Anheuser-Busch's] purchase of advertising under this Agreement, either Promoter or any person, firm or company affiliated with or otherwise related to Promoter will require any alcohol beverage retail licensee to purchase any alcohol beverage produced, sold or offered for sale by [Anheuser-Busch].

*Id.* Similarly, Anheuser-Busch warranted that it "ha[d] no agreement with any alcohol beverage licensee related to or respecting this Agreement." *Id.* at 69. Another warranty by the Promoter was that "[t]he rights purchased under this Agreement are being purchased at a rate no higher than that at which such rights are available to other prospective purchasers." *Id.*

In addition to sponsoring the Calf Fry, Anheuser-Busch provided its products at the event. Because Tumbleweed lacked the equipment to serve draft

beer, Anheuser-Busch brought trucks to keep kegs of beer refrigerated and ran draft lines from the kegs to the points of sale. Its employees were on site to work with the beer retailers to ensure that the beer's delivery was successful and to troubleshoot any problems that arose. An Anheuser-Busch employee admitted at his deposition that it had the "responsibility to make sure that the beer was properly supplied." *Id*. at 202. Anheuser-Busch's staff instructed Tumbleweed employees on the proper operation of the draft equipment, but no Anheuser-Busch employee poured or served beer to retail customers during the event. Although beer from other brewers was available at the Calf Fry, Anheuser-Busch was the "predominant" provider of beer at the event, Aplt. App. Vol. II at 481, and was the only provider that had beer trucks onsite.

Tumbleweed paid Anheuser-Busch for each keg that was actually tapped. Tumbleweed served some beer without charge to patrons at the event, but it had purchased this beer from Anheuser-Busch. At least one Anheuser-Busch employee received a commission on the amount of beer sold at the Calf Fry.

## B. Court Proceedings

The Complaint alleged a wrongful-death cause of action on behalf of Krystle Rogers's estate and common-law negligence causes of action on behalf of the other Plaintiffs. The causes of action both rested on Anheuser-Busch's alleged negligence. More specifically, the Complaint alleged that Krystle Rogers was killed and her passengers injured by Albright as he was leaving the Calf Fry;

that Anheuser-Busch, in cosponsoring the Calf Fry with Tumbleweed and "through [a] joint venture with Tumbleweed[]," had offered free beer to Albright, Aplt. App. Vol. I at 17; that Anheuser-Busch continued to serve Albright after he had become noticeably intoxicated; and that Albright then crashed into Ms. Rogers' vehicle "[a]s a direct and proximate result of [Anheuser-Busch's] negligence," *id.* Plaintiffs sought compensatory and punitive damages.

Anheuser-Busch moved for summary judgment on the ground that it was not liable for injuries caused by Albright because it was merely a manufacturer and wholesaler of beer and did not serve beer to Albright. It further argued that it was not a part of any joint venture related to the event. It did not contest that Albright was served only Anheuser-Busch beer, that he was visibly intoxicated when served, or that he caused the accident.

Plaintiffs' responses to Anheuser-Busch's motion stated two theories of negligence. The first theory was that Anheuser-Busch was negligent per se because it violated an Oklahoma statute prohibiting any "holder of a retail license or permit" from selling beer to an intoxicated person, Okla. Stat. tit. 37, § 247. Under Oklahoma negligence-per-se doctrine, one who violates a statute is liable for an injury when "(1) the injury [was] caused by the violation, (2) the injury [was] of a type intended to be prevented by the ordinance, and (3) the injured party [was] one of the class intended to be protected by the statute." *Ohio Cas. Ins. Co. v. Todd,* 813 P.2d 508, 510 (Okla. 1991). The second theory was that

Anheuser-Busch was liable under Oklahoma's common-law rule that "dram shops"—retail sellers of alcohol—may not serve beer to intoxicated patrons. In addition, Plaintiffs argued that Anheuser-Busch and Tumbleweed were joint venturers in conducting the Calf Fry. (Plaintiffs contended that Anheuser-Busch and Tumbleweed were the "true signatories and parties," Aplt. App. Vol. II at 325, to the Agreement—that is, that Tumbleweed itself was substantially identical to the Promoter. We will assume without deciding that this contention is correct.) Plaintiffs did not explain the relevance of the joint-venture contention, but apparently the theory was that Anheuser-Busch would be liable if its joint-venturer was.

The district court granted Anheuser-Busch's motion. It held that Plaintiffs' negligence-per-se argument "fail[s] for the simple reason that section 247 applies only to holders of retail licenses or permits and it is undisputed that defendants do not hold a *retail* license or permit . . . . Indeed, Oklahoma law specifically prohibits their obtaining such licenses. *See* 37 [Okla. Stat.] § 231(A)(1)." Aplt. App. at 561–62 (Order, Mar. 15, 2006). With regard to Plaintiffs' ordinary-negligence claim, the court held that "[n]either Oklahoma courts nor the Oklahoma legislature has extended dram shop liability to wholesalers and manufacturers of . . . beer." *Id*. at 562. And on the joint-venture issue the court held that Plaintiffs had not established that Anheuser-Busch and Tumbleweed shared profits, a necessary element of a joint venture under Oklahoma law.

-7-

Instead, it said, the relationship was that between a supplier and a purchaser because "[P]laintiffs admit that the price at which [Anheuser-Busch] sold . . . beer to Tumbleweed was the same price available to all retailers," and Anheuser-Busch did not share in any other receipts from the event. Aplt. App. Vol. II at 560 (Order, Mar. 15, 2006).

## II. ANALYSIS

"[S]ummary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Reinhart v. Lincoln County,* 482 F.3d 1225, 1228–29 (10th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "We review summary judgment orders de novo and may affirm the district court's grant of summary judgment on any grounds adequately presented below." *Id.* at 1228 (brackets and internal quotation marks omitted). "Review of a district court's determinations of state law in a diversity case is *de novo.*" *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 174 F.3d 1115, 1118 (10th Cir. 1999). We affirm the district court's grant of summary judgment to Anheuser-Busch. Plaintiffs have not presented evidence that could sustain their allegations that Anheuser-Busch violated Okla. Stat. tit. 37, § 247, is liable for ordinary negligence, or was in a joint venture with Tumbleweed.

### A.    Negligence of Anheuser-Busch

### 1.    Negligence Per Se

Plaintiffs contend that Anheuser-Busch was negligent per se because it violated Okla. Stat. tit. 37, § 247, which states:

> No holder of a retail license or permit to sell . . . beer, or an employee or agent of a holder of such a license or permit, shall knowingly, willfully, and wantonly sell, deliver or furnish . . . beer to an intoxicated person. . . .

Plaintiffs assert that the statute applies to Anheuser-Busch because it holds a "permit."  Although Anheuser-Busch's license is a wholesaler's license, not a retailer's, Plaintiffs say that the word "retail" in § 247 modifies only "license," not "permit to sell . . . beer."

We are skeptical of Plaintiffs' construction of the statute; but even if Plaintiffs are correct regarding the reach of the adjective "retail" in the text of the statute, their argument fails for a separate reason:  Anheuser-Busch did not "sell, deliver or furnish . . . beer to an intoxicated person."  No Anheuser-Busch employee sold beer to a consumer in a retail capacity, served any individual retail customer, or otherwise made decisions about which customers were to be served. Although it is undisputed that Anheuser-Busch sold, delivered, and furnished beer at the event, it is equally undisputed that it sold, delivered, and furnished this beer to Tumbleweed, not "to an intoxicated person."

## 2. Ordinary Negligence

Plaintiffs contend that Anheuser-Busch is liable under Oklahoma common law regardless of whether it violated § 247. But settled Oklahoma law is to the contrary. In *Sanders v. Crosstown Market, Inc.*, 850 P.2d 1061 (Okla. 1993), the Oklahoma Supreme Court declined to impose liability on a grocery store that knowingly sold liquor to a minor, who later served alcohol to the plaintiff, who in turn was involved in an automobile accident. The grocery store "had no obligation to anticipate" the injuries to the plaintiff from their having sold beer to a minor. *Id.* at 1064. The court explained that it had recognized only a limited exception to the traditional common-law rule that those who sell alcohol are not liable for the harms caused by those who drink it:

> In *Brigance* [*v. Velvet Dove Restaurant, Inc.*, 725 P.2d 300 (Okla. 1986)] we created a narrow exception to the common law rule that a tavern keeper who sells alcohol to a customer is not liable for injuries resulting from the customer's drunkenness. In *Brigance*, a restaurant owner sold alcohol for on premises consumption to a noticeably intoxicated customer. After leaving the restaurant, the customer drove his car while drunk, wrecked it, and a passenger in his car was injured. We modified the common law rule in *Brigance*. We did not abrogate it. We created a cause of action for the innocent injured passenger against the restaurant owner. Our holding went no further.

*Sanders*, 850 P.2d at 1062; *see also Todd*, 813 P.2d 508 (refusing to extend *Brigance* to cover injuries suffered by intoxicated adult driver himself). Of particular relevance to this case, *Sanders* endorsed the proposition that "'liability should not be extended to one who acts only as a conduit in providing alcohol to

-10-

those who directly serve it to others.'"  850 P.2d at 1064 (quoting *Wiener v. Gamma Phi Chapter of Alpha Tau Omega Fraternity*, 485 P.2d 18, 22 (Or. 1971)).

Anheuser-Busch did not serve alcoholic beverages to an intoxicated person, or to any consumer for that matter.  It did not make decisions about which patrons to serve or how much alcohol to serve, and did not require Tumbleweed to sell alcoholic beverages.  It was merely a supplier to a retailer.  Like a typical supplier, it did not direct Tumbleweed's retail decisions, despite its presence at the site of the Calf Fry and its support of operations on which sales of beer depended.  Plaintiffs are correct that Anheuser-Busch's status as a manufacturer and wholesaler of beer does not immunize it from liability regardless of its actions, but the fact remains that although Anheuser-Busch supplied alcohol for the event, it did not serve alcohol *to retail consumers*.

The wholesaler-retailer connection between Anheuser-Busch and Tumbleweed was not enough to impose common-law liability on Anheuser-Busch. In *Pate v. Alian*, 49 P.3d 85 (Okla. Civ. App. 2002), the Oklahoma Court of Civil Appeals held that even a franchisor-franchisee relationship did not suffice:

> [I]t may be true that Pizza Inn, Inc., [the franchisor] had some economic gain from the sale of alcohol that it permitted at this franchised restaurant, but it did not require its franchisees to sell intoxicating beverages, did not maintain any control over service of such beverages, and it was conclusively established that Pizza Inn, Inc., did not hold an alcoholic beverage license.  Plaintiff's admissions . . . clearly establish that *the decision to sell intoxicating*

-11-

*beverages was that of the franchisee*, as was the duty to abide by all state alcohol beverage laws. Under those admitted facts, the trial court correctly concluded that Pizza Inn, Inc., had no duty to Plaintiff.

*Id.* at 90 (emphasis added).

Plaintiffs separately contend that Anheuser-Busch should be liable to them because of its internal policies designed to minimize the risk of alcohol-induced accidents. Apparently relying on an Anheuser-Busch booklet that outlines programs that Anheuser-Busch has undertaken to promote "responsible consumption of our beers," Aplt. App. Vol. I at 227, including efforts to educate retailers, they assert that Anheuser-Busch "clearly established significant internal policies in an effort to prevent and/or reduce irresponsible drinking and drunk driving." Aplt. Br. at 15–16. They then claim, "Certainly, a question of fact exists as to whether Anheuser-Busch violated these policies, and whether it could be found negligent as a result." *Id.* at 16. We question the proposition that Anheuser-Busch's adoption of internal policies would impose on it a duty to consumers to follow those policies. *See Pate*, 49 P.3d at 90 (franchisor had no "duty to properly train and supervise the Franchisees in the area of alcohol awareness," despite its control over franchisees, its profit from alcohol sales, and its prior adoption of "an 'Alcohol Awareness' guide/manual" for training franchisees (internal quotation marks omitted)); *cf. Prince v. St. John Med. Ctr.*, 957 P.2d 563, 565–66 (Okla. Civ. App. 1998) (discharge for reporting "violations

of internal policies of a private employer" is insufficient for liability for wrongful discharge in violation of public policy). But even if we embraced that proposition, Plaintiffs on appeal fail to point to a particular policy that was allegedly violated or to any evidence of such a violation. In the absence of such factual support for this theory of relief, summary judgment for Anheuser-Busch on the claim must be affirmed. *See Adler v. Wal-Mart Stores*, 144 F.3d 664, 679 (10th Cir. 1998) (" [B]ald assertions in briefs that there are genuine issues of material fact are insufficient to merit reversal of summary judgment").

B.      Liability as Joint Venturer

Plaintiffs argue that Anheuser-Busch is liable regardless of whether it served beer directly to Albright because Tumbleweed did, and Anheuser-Busch was in a joint venture with Tumbleweed. In Oklahoma a party may be liable for the torts of its joint venturers. *See LeFlore v. Reflections of Tulsa, Inc.*, 708 P.2d 1068, 1071-72 (Okla. 1985). Oklahoma law considers parties to be in a joint venture when three elements are satisfied: "(1) joint interest in property, (2) an express or implied agreement to share profits and losses of the venture and (3) action or conduct showing cooperation in the project." *Martin v. Chapel, Wilkinson, Riggs, & Abney*, 637 P.2d 81, 85 (Okla. 1981). The district court found that there was no profit-sharing agreement, and hence no joint venture. We agree.

-13-

In support of their joint-venture argument, Plaintiffs point to both Anheuser-Busch's provision of beer at the Calf Fry and Anheuser-Busch's involvement in publicity and sponsorship of the event. As we previously stated, although the Agreement between the Promoter and Anheuser-Busch was not facially with Tumbleweed, we assume without deciding that it was actually with Tumbleweed, and we will not distinguish further between Tumbleweed and the Promoter.

Nonetheless, there was no joint venture because Anheuser-Busch and Tumbleweed did not share profits with one another. Virtually all products and services provided by one to the other were paid for at market prices. Not only does the Agreement stipulate that the parties have contracted at market rates, but Plaintiffs have not disputed that Anheuser-Busch was paid a market rate for the beer that it sold to Tumbleweed. Anheuser-Busch certainly benefitted from the success of the event by selling more beer, but this is true of any supplier. As a seller of beer, it was simply paid for its product. Separately, Anheuser-Busch paid to be the title sponsor of the Calf Fry. Under Oklahoma law the relationship between Anheuser-Busch and Tumbleweed was therefore not a joint venture. *See McGee v. Alexander*, 37 P.3d 800, 806 (Okla. 2001) (no profit sharing when supplier "provided and charged for services at a predetermined rate"; there was "simply nothing in the summary judgment record indicating Willow Creek was

prepared to offer its services at a loss or reap additional profits depending on the success or lack thereof of the Hillcrest event").

To support their joint-venture argument, Plaintiffs rely on *LeFlore*, 708 P.2d 1068. In *LeFlore* the winner of the "Miss Legs of Tulsa" contest sued a restaurant for invading her privacy by using her name without her permission to advertise an "I love you, Tulsa" party at the restaurant. *Id*. at 1070. The restaurant contended that it was not liable because the advertisement was produced and broadcast solely by a radio station; but the plaintiff responded that the party was a joint venture of the restaurant, the radio station, and a clothing store, so the restaurant shared liability. The radio station advertised and hosted the party; the clothing store presented a fashion show at the party; and the restaurant provided the facility, the staff, and food, but charged patrons half price for beverages. The three enterprises did not impose any charges on one another; and they shared "profit" in that all benefitted from the publicity surrounding the event, although the restaurant also derived some profit from the half-price beverage sales and sales of club memberships. The Oklahoma Supreme Court upheld the jury's finding that the restaurant had engaged in a joint venture with the radio station and the clothing store. *Id*. at 1072–73.

Plaintiffs argue that just as the businesses in *LeFlore* were joint venturers because they shared the "profits" of the "I love you, Tulsa" publicity, Tumbleweed and Anheuser-Busch both depended on the success of the Calf Fry to

generate publicity and thus shared the profits of the event. But Anheuser-Busch's purchase of sponsorship rights does not make it a joint venturer with the seller of those rights. Although both Anheuser-Busch and Tumbleweed stood to benefit if the Calf Fry succeeded, this alignment of interests arose because Tumbleweed sold part of its publicity interest to Anheuser-Busch. The parties did not *share* that interest. Indeed, the Agreement contained a promise from Tumbleweed to Anheuser-Busch that at least 1500 people would attend each Calf Fry event, thereby shifting the risk of poor attendance to Tumbleweed. To adopt Plaintiffs' argument would be to imagine that Oklahoma law treats as a joint venturer any entity that pays to have its name tied to an event regardless of its control of the activity. Unlike the situation in *LeFlore*, every significant component of the relationship between Anheuser-Busch and Tumbleweed was bought and sold at market rates. Plaintiffs point to Anheuser-Busch's gratuitous provision of logistical signs at the event, but this reflected only an incidental cost to Anheuser-Busch and is a customary service it provides for its retail accounts. This case is not controlled by *LeFlore*.

## III. CONCLUSION

For the foregoing reasons we AFFIRM the district court's grant of summary judgment to Anheuser-Busch.